## MOEHRING *vs.* MITCHELL, public adm'r, &c.

Where a married woman procured a policy of insurance, upon the life of her husband, in her own name, and for her sole use, as authorized by the act of April, 1840, the insurance money being made payable to her children in case she should die before her husband, and subsequently both husband and wife, and their only child, perished at sea; by the same disaster, and probably at the same moment: *Held*, that the act of April, 1840, did not extend to the case; and that this contract of insurance stood upon the same footing as any other contract made by a feme covert, in her own name, in the lifetime of her husband, and without the intervention of a trustee.

Where the mother and daughter perished at sea, and by the same disaster, and there was no evidence of survivorship; *Held*, that there was no legal presumption that the daughter survived the mother.

*It seems* that where the husband and wife perish together, at sea, and where there is no evidence to authorize a different conclusion, it will be presumed that the husband survived his wife.

At common law the husband may sue upon bonds, notes, and other contracts for the payment of money, given to the wife during coverture, either in his own name, or in the name of himself and wife jointly; at his election.

Where he elects to treat them as his own, by bringing a suit in his own name only, the judgment will belong to his personal representatives, although his wife survives him. But if he sues in their joint names, the judgment will belong to her, by survivorship, if he dies first.

And where the consideration of the bond, or other security, has proceeded from the wife, or her estate, or where it was the gift of a third person, if the husband does not dispose of such security, or collect the money due thereon, or proceed to judgment thereon in his own name during his lifetime, it seems the debt will belong to her, by survivorship, if she outlives him.

A feme covert cannot, under the provisions of the revised statutes, make a will of her general personal estate, during coverture; founded upon the mere assent of the husband to the making of such will.

And *it seems* that she cannot dispose of her separate estate by will, unless such will is made in pursuance of a power, either beneficial or in trust, to dispose of her separate estate by will, or by a testamentary instrument in the nature of a will.

But a feme covert having personal estate conveyed to her separate use, with an express power to dispose of it by will at her death, may make a will, or an instrument in the nature of a will; for the purpose of appointing, or disposing of such property, in pursuance of such power.

THIS was an appeal from a decision of the circuit judge of the first circuit, affirming a sentence and decree of the surrogate of New-York, refusing to admit to probate, as a will of personal

estate, an instrument in writing propounded by the proctor of the appellant, as the will of Isabella Leo Wolf, deceased.

The following opinion was delivered by the circuit judge :

KENT, C. J.   I agree with the surrogate in his conclusion, as to the invalidity of the will of Mrs. Leo Wolf.   The right of making a will of real property a married woman never had, by the law of England or America, at least since the conquest. As to personal property, before our revised statutes, the capacity of a married woman was less restricted.   She could not devise lands, because, by the feudal law, none could devise; and the statute of wills, (32 *and* 34, *Henry* 8,) did not relieve her from this restriction.   But she was prevented from exercising the power of testamentary disposition of personal effects, which power, by imperceptible degrees, freeing itself from ecclesiastical usurpations, became common to all persons except married women, by the rights acquired by her husband in her personal property; and with which rights, a power in the wife of bequeathing that personal property would have been inconsistent.   (2 *Black.* 498.)   The license of the husband gave her the power of testamentary disposition, because it removed the reason for restricting the power.

But the revised statutes, (2 *R. S.* 60,) it seems to me most clearly, put an end, by positive and unequivocal prohibition, to the remnant of testamentary power remaining in married women.   "Every person of the age of eighteen years, or upwards and every female, not being a married woman, of the age of sixteen years, or upwards, of sound mind and memory, and no others, may give and bequeath his, or her, personal estate, by will in writing."   There is no reservation of pre-existing rights, as in a recent English statute on this subject.   (1 *Vict. c.* 26.) What was a common law right has become statutory; and a positive prohibition is enacted against the exercise of the right by any other than those mentioned in the statute.   A married woman may not, then, give and bequeath her personal estate by will in writing.   The disposition of personal estate, by will, appears to me to be forbidden to married women, by language,

even stronger than that which prevents her devising real estate. The consent of the husband could not authorize a devise of lands; and I cannot see how it can, under our laws, authorize a testament of chattels.

This doctrine will not exclude a disposition of personal property, testamentary in its nature, or akin to a testament, if made by a married woman under a power. For, as was observed in an early case, *Southby* v. *Stonehouse,* (2 *Ves. sen.* 610,) such disposition is not a proper will; but merely a direction of the use or trust, arising under the instrument creating the power, and depending for its efficacy wholly upon the validity of that instrument. Neither do I pretend to say it would limit, or affect, the power of a court of equity to carry into effect a wife's disposition of her separate estate. All I mean to say is that, in the present case, I cannot see how the surrogate, in the exercise of his duties in recording and granting probate of wills, could, under our existing laws, permit the paper propounded, to be proved as the last will and testament of Isabella Leo Wolf. The decree of the surrogate is therefore affirmed.

*Geo. F. Allen,* for the appellant. I. The policy of insurance was the separate property of Isabella Leo Wolf. Such is the tenor and effect of the policy. The consideration is sixty-five dollars and forty-one cents, to them in hand paid by Isabella Leo Wolf. It assures the life of Joseph for the sole use of the said Isabella Leo Wolf. The company contract with her, her executors, administrators and assigns, in case of loss, to pay the sum insured to her, her executors, administrators and assigns, for her sole use. (*See Adamson* v. *Armitage,* 19 *Ves.* 415; *Ex parte Ray,* 1 *Mad.* 199.) The provisions in the act, and in the policy, relative to the children, only apply where the wife has not disposed of her interest; at all events, they have no application in the present case, because (1.) The contingency has not happened. Mrs. Wolf and her husband having sailed in the same ship, and never having been heard of, they will be held to have died at the same instant. (*Taylor* v. *Diplock,* 2 *Phil.* 261. *Wright* v. *Saunders, Id.* 266, *note* (c).

Moehring *v.* Mitchell.

*Satter thwaite* v. *Powell,* 1 *Curt. Ecc. Rep.* 705.) and (2.) their only child died with them. Isabella Leo Wolf was fully empowered to become a party to such a contract, and to acquire such rights, by the law of 1840. (*See Laws of* 1840, *p.* 59.)

II. The policy being thus the separate property of Isabella Leo Wolf, she is regarded, in equity, as to that property, as a feme sole; and as an incident to that property, she had the power of disposing of it, either by will or otherwise. (*Peacock* v. *Monk,* 2 *Ves. jun.* 190. *Rich* v. *Cockell,* 9 *Id.* 369. *Fettiplace* v. *Gorges,* 1 *Id.* 47. *Whistler* v. *Neuman,* 4 *Id.* 135. *Clancy, Husb. and Wife,* 308. *Methodist Ep. Ch.* v. *Jaques,* 17 *John. R.* 578. *Powell* v. *Murray,* 2 *Edw. Rep.* 643. *N. Am. Coal Co.* v. *Dyett,* 7 *Paige,* 9; 20 *Wend.* 570, *S. C. Gardner* v. *Gardner,* 7 *Paige,* 112.)

III. So far as its form goes, the instrument endorsed on the policy is a will, and is entitled to probate. (*Glynn* v. *Ostrander,* 2 *Hagg.* 432. *Masterman* v. *Maberly, Id.* 247. *In the goods of Joseph Knight, Id.* 554. *Lovelass on Wills,* 317.)

IV. Being made by a married woman, it may not be, strictly, and at law, a will; but being of a testamentary nature, its testamentary character must be established by being proved as wills are proved; before courts, either of law or equity, will take cognizance of it. (2 *Roper, Husb. & Wife,* 188, *and note* (*m*). *Stevens* v. *Bagwell,* 15 *Vesey,* 152. *Picquet* v. *Swan,* 4 *Mass.* 60.)

V. The provisions of the revised statutes have not changed, in any respect, the rights of married women to separate estates, or their powers over such estates. 1. The statute relative to wills of personal property, (2 *R. S.* 60, § 21,) was not intended to change the position of married women, in equity, as to their separate property, but to regulate the manner of making wills. 2. It makes no change in the law, but is merely declaratory of what was before the law. (2 *Black. Com.* 498. *Toller on Executors,* 9, 10. *Lovelass on Wills,* 266.) 3. The legislature only intended to declare what was the law. (*Reviser's notes,* 3 *R. S.* 2d ed. 629. *Heyer* v. *Bergen,* 1 *Hoffm. Rep.* 2.) The statutory provision in reference to wills of personal prop-

erty, is identical, in effect, with what has been a statutory pro-
vision in reference to wills of real property for over three
hundred years; under which courts of equity have always sus-
tained the testamentary disposition of their separate real estate
made by married women. (*See cases cited under the second
point. Bradish* v. *Gibbs*, 3 *John. Ch. Rep.* 523.) The two
provisions are in pari materia, and should both receive the same
construction.

*H. Wilson*, for the respondent.

THE CHANCELLOR. The facts in this case, so far as the
same can be ascertained from the proceedings returned by the
surrogate, are substantially these. In May, 1840, Isabella Leo
Wolf, the wife of Joseph Leo Wolf, procured a policy of insu-
rance, from the New-York Life Insurance and Trust Company,
upon the life of her husband, for $5000, for the term of five years.
The policy was in her own name, and for her sole use; as au-
thorized by the first section of the act of April, 1840, in respect
to insurances for lives for the benefit of married women.
(*Laws of* 1840, *p.* 59.) And the amount was made payable to
the assured, or her executors, administrators or assigns, for her
sole use, within sixty days after due notice and proof of the
death of her husband; and in case of her death before his de-
cease, the same was made payable to her children, for their use,
or to their guardian if they were under age; as authorized by
the second section of that act. In March, 1841, the assured
and her husband, and, as the counsel for the appellant states,
their only child, sailed for Europe in the steam ship President,
and have never since been heard of; and there is no doubt that
such ship was lost, and that all on board perished. A few days
before they sailed for Europe, Mrs. Leo Wolf executed the pa-
per propounded as her will, in the presence of two subscribing
witnesses, on the back of the policy of insurance, in the follow-
ing words: "In the event of the within policy, No. 1321, of the
New-York Life Insurance and Trust Company, becoming pay-
able, by said company, in consequence of the death of my hus-

Moehring v. Mitchell.

band, Joseph Leo Wolf, and in the event of my being, at the time when the within policy becomes payable, not among the living, it is my wish and will; and I hereby order and direct that the amount insured in said policy, on the life of my husband, shall be paid over to Doctor Gottlief Moehring, of the city of Philadelphia, in trust; to be held by him for my daughter Mary Jane Leo Wolf, until her becoming of age; and in the event of her death, before coming of age, without issue, I hereby direct that the whole amount thus held in trust by the said Gottlief Moehring shall be divided in equal parts and shall be paid over to the children of the brothers and sisters of my husband, Joseph Leo Wolf, living at the time when such division shall take effect. Given under my hand and seal in the city of New-York, this 6th day of March, 1841. Isabella Leo Wolf." (L. S.) And her husband, at the same time, and in the presence of two subscribing witnesses, wrote the following consent under the same; "I consent to the above, and ratify the same. New-York, 6th March, 1841. Joseph Leo Wolf."

In April, 1842, G. F. Allen, as proctor for the appellant, who was the trustee, or executor, named in the instrument propounded as a will, presented a petition to the surrogate of New-York, stating that the decedent left assets or personal estate in the city and county of New-York; and praying that the instrument propounded might be admitted to probate, and that letters testamentary thereon might be granted. The next of kin of the decedent were duly cited to attend before the surrogate, and the public administrator, having taken out administration on the estate of Joseph Leo Wolf, was also cited; and they resisted the probate of the instrument propounded, upon the ground that a married woman could not, under the provisions of the revised statutes, make a will of personal estate, even with the consent of her husband. The surrogate sustained the objection, and rejected the instrument propounded as a will, upon that ground alone. And the circuit judge, upon appeal to him, arrived at the same conclusion; as appears by his written opinion.

The insurance money in this case, by the terms of the policy,

Moehring v. Mitchell.

was made payable to the children of the assured, in case she died before her husband. If her daughter had survived her, therefore, it would have been necessary, perhaps, to inquire whether there is any legal presumption that the husband survived his wife ; when they have both perished by the same disaster, and when there is no extrinsic evidence to guide the judgment of the court upon this matter of fact. In the cases of *Taylor* v. *Diplock*, (2 *Phill. Rep.* 267,) *Colvin* v. *The King's Proctor*, (1 *Hagg. Eccl. Rep.* 92,) and in *Selwyn's case*, (3 *Idem*, 748,) it appears to have been supposed, in the absence of any evidence to justify a different conclusion, that the court would be bound to presume a survivorship of the husband, where the husband and wife perish together at sea ; upon the ground, I presume, that the greater strength of the male would probably enable him to sustain life the longest, in such a calamity. But as there is no presumption of the survivorship of the daughter, in this case, after the death of her mother, and the probability is that they both perished at the same moment, it becomes immaterial to inquire whether it must be presumed that the husband survived his wife. It is sufficient for this case, that there is no legal presumption that she survived him. For if she did not survive him, I am of opinion that the act of April, 1840, does not extend to the case; and that, in the event which has occurred, this contract of insurance stands upon the same footing as any other contract made by a feme covert, in her own name, in the lifetime of her husband, and without the intervention of a trustee. By referring to the first section of that act it will be seen that the insurance money is only payable to her, to and for her own use, free from the claims of the representatives of the husband, and of his creditors, in case she survives her husband ; but not where they both die at the same instant, or where he survives her. The second section of the statute provides for the case of survivorship of the husband, where the wife has left children ; by authorizing the insurance money to be made payable to such children, or to their legal guardians, for their use. But no provision is made, by the statute, for this case ; where there are no children, and where the husband survived

Moehring v. Mitchell.

the wife; or where they both perished at the same instant, so that neither survived the other.

In regard to bonds, notes, and other contracts, for the payment of money, given to the wife during coverture, the common law rule appears to be, that the husband may sue upon them in his own name, or in the name of himself and wife jointly, at his election. Where he elects to treat them as his own, by bringing a suit and proceeding to judgment in his own name, the judgment will belong to his personal representatives, although his wife survives him. But if he sues in their joint names, the judgment will belong to her by survivorship. And where the consideration of the bond, or other security, given to the wife in her own name, during coverture, has proceeded from her, or her estate, or where it was the gift of a third person, it seems that if the husband does not dispose of such security, or collect the money thereon, or proceed to judgment in his own name, during his lifetime, it will belong to her by survivorship if she outlives him. (*See Nash* v. *Nash,* 2 *Mad. Rep.* 133; *Hilliare and wife* v. *Hambridge, Alleyn's Rep.* 36; *and Searing* v. *Searing,* 9 *Paige's Rep.* 283.) In cases of this kind, as well as in cases of choses in action given to the wife before coverture, or other property of the wife not reduced to possession by the husband, the wife was permitted, previous to the revised statutes, to dispose of the same by will, with the written authority and consent of her husband, in case he survived her. The principle upon which such wills were originally sustained in equity, and afterwards at law, probably was that as the husband, if he outlived the wife, would be entitled to the property by survivorship, and had also the right to reduce it to possession immediately, during coverture, he might waive such right. He could, therefore, allow her to appoint it to whom she pleased, by an instrument in the nature of a will; although such will was, in fact, nothing but an appointment with his assent. The provisions of the revised statutes, however, have somewhat changed the husband's rights to the property of his wife, by survivorship; by refusing him the right to administer thereon without giving security for the payment of her debts, to the amount of the

Moehring v. Mitchell.

assets which may come to his hands. (2 *R. S.* 75, § 29.) And as he is entitled to all his wife's personal estate by survivorship, and even during her life subject to her equity to a support out of the same, he ought not to be permitted to deprive his own creditors of the benefit thereof, in case of her death, by permitting her to dispose of it by will, during coverture. The provision of the revised statutes which declares that males of the age of eighteen years and upwards, and unmarried females of the age of sixteen and upwards, *and no others*, may dispose of his or her personal estate by will, (2 *R. S.* 60, § 21,) is, as I think, sufficient to deprive a 'feme covert of the right to make a will of personal estate, of the character above described; founded upon the mere assent of the husband to the making of the same. And I am also inclined to think, it likewise deprives her of the right to dispose even of her separate estate by will; where it is not so disposed of in pursuance of a power, either beneficial or in trust, to dispose of such separate estate by will, or by a testamentary instrument in the nature of a will.

The revised statutes, however, have expressly provided for the execution of beneficial powers, as well as powers in trust, by femes covert, in relation to their real estate and chattels real. (*See* 1 *R. S.* 732, § 78, 80, *and* 87; *Idem*, 735, § 105, 106, 110, *and* 115; *Idem*, 737, § 130; *and Idem*, 750, § 10.) I cannot, therefore, believe that it was intended, by the legislature, to deprive a feme covert, who has personal estate conveyed to her separate use, with an express power to dispose of it by will at her death, of the right to make a will, or an instrument in the nature of a will; for the purpose of appointing or disposing of her separate estate, in pursuance of such power. That question, however, is not necessary to be settled at this time; as there was no power reserved in the policy, in this case, authorizing the wife to dispose of the insurance money, by will or otherwise, in the event which has occurred. Nor had the interest of the husband, or of the wife, in this policy, been conveyed to a trustee, subject to such a power of appointment by the wife. For these reasons, I think the insurance money belongs to the personal representatives of the husband, to be disposed of as a part of his

personal estate; and that the instrument propounded as the will of Isabella Leo Wolf, ought not to be admitted to probate.

The order of the circuit judge affirming the sentence and decree of the surrogate must, therefore, be affirmed. As this, however, was a new and somewhat difficult question, arising for the first time under the provisions of the revised statutes, and of the act of April, 1840, I shall not charge the appellant with the costs of the respondent on this appeal; but shall direct such costs to be paid out of the insurance money which is in controversy in this suit.