SAMUEL NEWELL, Executor, etc., of ELIZABETH M. WALTER, Deceased, and with SAMUEL TREAT, sole surviving trustee under her will, Respondents, v. GEORGE H. NICHOLS and JOHN T. MURPHY, Executors, etc., of CHARLES W. WALTER, Deceased, AUGUSTA STINDE and others, impleaded with JOSEPH RIDGWAY, and others, Appellants.

*Death of several persons in one disaster — presumption as to survivorship — burden of proof.*

Elizabeth M. Walter died in 1870, leaving her husband and two children, a son and daughter, her surviving, and a last will, by which she devised all her property to trustees therein named in trust to sell and invest the proceeds so as to make three funds, one of $30,000 and the other two of $15,000 each ; the income of one of the funds of $15,000 to be paid to the daughter during her life, the principal to be paid at her death to the heirs of her body then living, and in default of such heirs, to whom she might appoint by will, and in default of appointment, to the heirs of the body of the testatrix then living, and in default of such heirs, the remainder over to certain persons therein named The trust as to the other $15,000 for the benefit of the son was the same. The income of the $30,000 fund to be paid to the husband, and, upon his death, the principal to be paid to the heirs of the body of the testatrix then living, and in default of such heirs, then the remainder to go to certain persons before named.

The father and two children sailed in the *Schiller* and were lost in its wreck, there being no evidence of any survivorship. In an action brought for the construction of the will, and the determination of the persons entitled to the trust estate, *held*,

That there was no presumption of law arising from age or sex as to the survivorship among persons whose death is occasioned by one and the same cause; nor is there any presumption that they all died at the same time, but the burden of proof is upon the one asserting the affirmative.

That, under the will, the title to the estate vested in the trustees immediately on the death of the testatrix and so remained until the death of the children and husband, and that no title or legal interest therein vested in the husband or children.

That as the legal title was not in the children, they had nothing, if they perished in the same moment, to transmit, and that in order to authorize the next of kin or heirs at law of either child to take, the survivorship of such child must be proved.

That upon the happening of the contingency contemplated by the will, that is upon the death of the children without issue and without heirs of the body of

the testatrix then living, the estate of the trustees terminated, and the remainder vested in possession in those to whom it was limited.

That the remainder-men made out a case when they proved the loss of the issue of the body of the testatrix by the same disaster, as, under such circumstances, without proof of survivorship, the default contemplated had occurred.

The will gave the remainder "to the children or heirs of Frederick A. Ridgway, Moses Ridgway, John Gunn and Henry Gunn." *Held*, that the devise was to the children or heirs of each of these persons, and that the devisees took *per stirpes* and not *per capita*.

APPEAL from a judgment entered on the trial of this action at the Special Term.

Elizabeth M. Walter, died October 7, 1870, leaving a last will and testament of which the following are the material portions:

"Fourth. I give, devise and bequeath, to my said husband, Charles W. Walter, and my friends, Samuel Treat, of St. Louis, Missouri, and Samuel Newell, of Clifton, New Jersey, and to the survivor of them, and to their successors in this trust, all of my estate, real, personal and mixed, not hereinbefore disposed of, in fee simple, and of absolute property, in trust, however, for the following purposes, to wit: With power to the survivor or survivors of said trustees to appoint a successor or successors in place of any of them who may die during the continuance of this trust. First, to set apart, sell, mortgage, convey, lease or otherwise dispose of the same as by them may be deemed advisable, and to invest the proceeds thereof and reinvest said proceeds so as to make two funds of $15,000 each, and one fund of $30,000 to be held by them in trust as aforesaid, the income of one of said funds of $15,000 to be paid by said trustees, semi-annually, to my beloved daughter, Mary R. Walter, as a memorial of her aunt Clara, during her natural life, for her sole and separate use, the principal of said fund to be paid at her death to the heirs of her body then living; and in default of such heirs living, to whom she may appoint by her last will and testament, discharged of all further trust, and in default of said heirs of her body living at the time of her death, or of said appointment, the remainder over to the heirs of my body then living, and in default of heirs of my body living at the time of her death the remainder over to the children or heirs of Frederick A. Ridgway of Ithaca, New York, Moses Ridgway, of West Newbury, Massachusetts, John Gunn and Henry Gunn, the last two being brothers of my mother, discharged

of all further trust." Then followed the same provisions as to the other fund of $15,000, in favor of her son.

"And the income of the said fund of $30,000 to be paid by said trustees, semi-annually, to my beloved husband, Charles W. Walter, during his natural life, the principal of said fund to be paid at his death to the heirs of my body then living; and in default of heirs of my body living at the time of his death, the remainder over to the children or heirs of Frederick A. Ridgway, of Ithaca, New York, Moses Ridgway, of West Newbury, Massachusetts, John Gunn and Henry Gunn, the last two being brothers of my mother.

And it is my will that that portion of my estate hereby bequeathed and devised to said trustees, in trust, which shall not be by them used to create said three funds respectively; two of $15,000 each, and one of $30,000, shall be held by them, in trust, for the following purposes: to sell, mortgage, lease, convey, or otherwise dispose of the same, as by them may be deemed advisable, and to invest the proceeds thereof, and reinvest such proceeds, so as to make two equal funds, each of said funds to be held by them in trust as aforesaid; the income of one of said funds to be paid to my beloved daughter, Mary R. Walter, during her natural life, and the principal of said fund to be paid at her death to the heirs of her body then living; and in default of such heirs of her body living at the time of her death, then the income of said fund to be equally divided between my other children during the life of my said son, Joseph R. Walter, and at his death the principal to be paid to the heirs of my body then living, and in default of heirs of my body then living, to the children or heirs of Frederick A. Ridgway, of Ithaca, New York, Moses Ridgway, of West Newbury, Massachusetts, John Gunn and Henry Gunn, the last two being brothers of my mother." Then followed a similar provision as to the other fund.

"It is my will that my friend, Mrs. Louisa Bartlett, wife of Edmund Bartlett, of Newburyport, Massachusetts, shall have $3,000 out of that part of my estate which, by the foregoing provisions of my will, would, in the event of a failure of issue of my body, go to my collateral relatives, the Ridgways and Gunns above named."

At the time of Mrs. Walter's death she left her surviving, her husband, Charles W. Walter, and two infant children, Mary R. Walter and Joseph R. Walter. In 1874, Mrs. Ridgway, the mother

of Mrs. Walter, Charles W. Walter, the husband and the two children, Joseph R. and Mary R., embarked in the steamship "Schiller," and were drowned when that vessel was wrecked. There was no evidence to show which, if any, of those persons survived. This action was brought to obtain a judicial construction of the will and to determine the rights of the several parties mentioned therein.

*George C. Genet and others,* for the appellants. The direction in the will of Mrs. Walter to her executors to sell the real estate for a division between her two children being positive, the estate is, in that respect, to be regarded as personal estate to be disposed of by the laws of this State, which was the domicil of the testatrix, without regard to the location of the property. (*Phelps* v. *Pond,* 23 N. Y., 69; *Makings* v. *Cromwell,* 1 Seld., 136; *Hosford* v. *Nichols,* 1 Paige, 226; *Nicholson* v. *Leavitt,* 4 Sandf., 276; *Andrews* v. *Harriott,* 4 Cow., 508, 527, note; *Hatch* v. *Bassett,* 52 N. Y., 361; *Cutter* v. *Davenport,* 1 Pick., 81; *Holmes* v. *Remsen,* 4 Johns. Ch., 462; Storey's Conflict of Laws, § 424, and cases in note, §§ 428, 445.) Upon the death of Mrs. Walter the whole estate at once vested in her two children, one-half in each, whether under the will or under the statute, subject only to the execution of the trusts or powers contained in the will, whatever they may be. (*White* v. *Howard,* 52 Barb., 294; S. C., 46 N. Y., 144; *Boynton* v. *Hoyt,* 1 Den., 57; *Lang* v. *Ropke,* 5 Sand., 363; 2 R. S., 729, §§ 56, 58; *Hatch* v. *Bassett,* 52 N. Y., 361, 362; 1 R. S., 729, 730, §§ 60, 61, 62; *Lefevre* v. *Lefevre,* 59 N. Y., 446.) The law favors the construction which is in favor of the heir of the testator. (*Quinn* v. *Hardenbrook,* 54 N. Y., 86.) The rule is peremptory that the heir shall not be disinherited unless by plain and cogent inference arising from the will. (*Doe* v. *Ding,* 2 M. & S., 445; *Van Kleek* v. *Dutch Church,* 20 Wend., 457, 471.) The trust estate terminated at the death of each beneficiary. (1 R. S., 730, § 67; *Harris* v. *Clark,* 3 Seld., 259; *Savage* v. *Burnham,* 17 N. Y., 574; *Everett* v. *Everett,* 29 id., 71; *De Barrante* v. *Gott,* 6 Barb., 493.) The whole estate being vested in the children, subject only to the trusts, it remains so vested until those who claim under the contingent remainders prove the happening of the events which entitle them, or any of them, to the whole or any portions of the estate. The law presumes

things that exist to be right until the contrary is proved. The burden of evidence is on the claimants, who, in this case, are the Ridgway family. It is incumbent upon the claimants to show their title by proof that all the contingencies have happened which were a condition precedent to their right. They must therefore prove, to obtain either half, that one child died before the other, and which one died the first, so as to show that when one died there were no heirs of the body of testatrix living to inherit; also that Walter survived the children. In this case there is no presumption of law, either that they perished at the same moment or that either survived the other, and, in the absence of the proof, the court will not attempt to pass the estate through the will, but will adjudge an intestacy after the trust life estate in the two children provided for in the will. (*Wing* v. *Angrave*, 8 H. of L., 183; *Underwood* v. *Wing*, 4 DeG., M. & G., 661; *In Green's Settlement*, 1 Law R. Eq., 288; *Taylor* v. *Diplock*, 2 Phillimore, 261; *Burnett* v. *Tugwell*, 31 Beav., 232; *Boughton* v. *Randall*, Cro. Eliz., 503; *Calvin* v. *Kings*, Proc. 1, Hagg. E. R., 92; *Scheyer's Case*, id., 748; *Moehring* v. *Mitchell*, 1 Barb. Ch., 264; *Coye* v. *Leach*, 8 Metc. [Mass.], 371.) Should this view of the law be overruled, then the executors of Walter are entitled to an account, and to receive from the estate of Mrs. Walter the income due on the trust fund of $30,000 from the time of Mrs. Walter's death to his own, at seven per cent, whether it was set apart to him or not. Where the object of a trust is to raise an annuity for support, the interest is payable from the death of the testator. (*Williamson* v. *Williamson*, 6 Paige, 304; *Le Terrier* v. *Bulwer*, 2 Sim., 18; *Cook* v. *Meeker*, 36 N. Y., 15; 34 How., 115; *Devlin's Estate*, 1 Tucker, 460; 2 R. S., 97, § 79, as amended; Sess. Laws 1867, chap. 782, § 11.)

*B. Roelker*, for the heirs of John and Henry Gunn, respondents. In the event that several persons die in the same disaster, and there is no evidence that one survived the others, the American and English authorities recognize no artificial presumption arising from age, sex or physical condition, but all are taken to have died at the same instant, and there is no transfer of rights or property from the one so dying to any of his companions in the disaster. When, therefore, a party, on whom the burden lies of proving the

survivorship of one individual over another, has no evidence beyond the assumption that from age or sex the one individual must be taken to have struggled longer against death, he cannot succeed. All English cases bearing on this subject are collected in W. M. Best on Law of Evidence (vol. 2, p. 187), 1st Am. ed., by H. J. Wood (pp. 724–727, § 410). (Treatise on Evidence, by John Pitt Taylor [London, 1873], vol. 1, p. 201, § 159; Greenl. on Ev., vol. 1 [13th ed.], p. 38, § 30, note 2; *Coye* v. *Leach*, 8 Metc., 371; *Smith* v. *Croom*, 7 Fla., 81–180; *Pell* v. *Ball*, 1 Cheves Eq., 99; *Moehring* v. *Mitchell*, 1 Barb. Ch., 264; 3 Hagg. Eccl. R., 748 [1831]; *Durant* v. *Friend*, 5 DeG. & S., 343; *Wright* v. *Netherwood*, or *Wright* v. *Sarmuda* [Prerog. Easter Term, 1793], Notes of Evan's Ed. of Salk., 593; *Mason* v. *Mason*, 1 Merivale Ch., 308 [1816]; *In the Goods of Robert Murray*, 1 Curteis, 596; *Saterthwaite* v. *Powell*, id., chap. 705; Austrian Civil Code, § 25; Prussian Civil Code; Civil Code of Holland, § 878; *Underwood* v. *Wing*, 19 Beav., 459; S. C., 31 L and Eq. R., 293; S. C., on appeal before the lord chancellor, 4 DeG., M. & G., 633; and in the House of Lords in 1860, under the name of *Wing* v. *Angrave*, 8 H. of L., 183.) The devise in the will to the heirs of the Ridgways and Gunns was a contingent and executory or conditional limitation, which took effect when the precedent limitation failed. In the case at bar, but for the subsequent limitation to the Ridgways and Gunns, the property bequeathed would have passed to the residuary legatees or heirs at law. But that limitation does not fail, because the precedent estate did not take effect. Where a devise is limited to take effect upon a condition, or a contingency annexed to a preceding estate, if that preceding estate should not arise, the remainder over will, nevertheless, take place, the first estate being considered only as a preceding limitation, and not as a preceding condition, to give effect to the subsequent limitation. (*Norris* v. *Beyea*, 13 N. Y., 287; *Avelyn* v *Ward*, 1 Ves., Sr., 419; *Warren* v. *Rudal*, 4 Kay & Johnst., 603; *Jones* v. *Westcomb*, Prec. Ch., 316; *Foster* v. *Cook*, 3 Brown Ch., 286; *Murray* v. *Jones*, 2 Ves. & B., 313; *Pearsall* v. *Simpsons*, 15 Ves., 29.) The will of the testatrix provides that the executors and trustees shall have the power to sell and convey, or otherwise dispose of the same, and to invest the proceeds so as to make the two funds of $15,000 each, and one for

$30,000; this provision creates an equitable conversion of the real estate into a personal estate from the time of the death of the testatrix. (*Stagg* v. *Jackson*, 1 Comst., 206; *Graham* v. *Livingston*, 7 Hun, 11; *Kinnie* v. *Royers*, 42 N. Y., 531; *Skinner* v. *Quinn*, 43 id., 100; *Crittenden* v. *Fairchild*, 41 id., 289; *Dodge* v. *Pool*, 23 id., 69; *Ashby* v. *Palmer*, 1 Hoffman, 219; 1 Jar. on Wills, 528; 2 Story Eq., § 791, pp. 1212–1214.) The provisions of the Revised Statutes in relation to uses and trusts do not refer to personal property. (*Genet* v. *Beekman*, 26 N. Y., 41.) Trusts in personal estate are subject to no statutory restrictions; in other words, the legislature has never attempted to define and enumerate the lawful occasions for creating such trusts. They stand, therefore, as at common law, subject only to the statutory rule against the suspension of ownership for more than two lives. (*Gilman* v. *Redington*, 24 N. Y., 12; see, also, *Manice* v. *Manice*, 43 id., 380; and in *Brown* v. *Harris*, 25 Barb., 134.)

*Wm. Fullerton*, for administrators, with the will annexed, of Mary Ridgway deceased, respondents.

*George·C. Blanke*, for guardian *ad litem* of infant children of Frederick A. B. Ridgway, respondent.

*Henry Arden*, for children of Moses Ridgway and guardian *ad litem* for Susie and Joseph R. Gunn and others, respondents.

DAVIS, P. J.:

This case received at the hands of the learned judge before whom it was tried at Special·Term, a most elaborate and careful consideration. In disposing of it he pronounced the following opinion:

"VAN VORST, J.:

Whether the remainder over to the children or heirs of Frederick A. Ridgway, Moses Ridgway and John and Henry Gunn, has become wholly legally vested in them in possession depends upon the determination of the question, as to whether or not, there was any survivorship between the two children, the mother and husband of the testatrix, who were drowned with the sinking of the steamship 'Schiller.'

If they all died in the same moment, then neither the children nor the testatrix left heirs of their bodies living, and the remainders in question in their entirety, by the express terms of the will, vest in the children or heirs of the persons above named.

Questions of doubt and perplexity have often arisen with regard to the title to property and the distribution of estates where several persons, upon the survivorship of one of whom the question rested, have perished in the same calamity, such as a shipwreck or battle, and where there was no evidence as to who died first.

The civil law considers questions of this nature and has enunciated certain rules deduced from probabilities arising from the age and difference of sex of the parties. If the persons perishing were under fifteen, the eldest was presumed to survive. If all were above sixty the youngest was presumed to have survived. The French Code recognizes presumptions of survivorship growing out of the ages and sex of persons perishing in a common disaster. (Kent's Com. vol. 2, p. 435 and notes ; Best on Evidence, vol. 2, § 410, and Greenleaf on Evidence, vol. 1, § 29, where the references to the French and civil law are collected.)

The Code of Louisiana following the civil law, has adopted fixed rules upon this subject. (Civil Code of Louisiana, §§ 930–933.)

By the law of India, where relatives perish thus together, it is presumed that they all died at the same moment and the property of each passes to his living heirs without any portion of it vesting in his companions in misfortune. (Baillies' Law of Inheritance, 172.)

By the Civil Code of Holland (§ 878), in the absence of evidence, the presumption is, that all persons die together at the same moment, and that there is no transmission or succession from one in favor of the other.

The English Common Law has never adopted these provisions. It requires the survivorship of two or more persons to be established by facts and not by any arbitrary rule or prescribed presumption.

It would seem to be unsafe to rely upon any presumption arising, either from age or sex with regard to survivorship of persons exposed to a common peril by the sinking of a ship. It is true, that one might, by strength and powers of endurance survive the other, but the strongest might perish first. Experience in such

cases shows that no rule can be unalterably adopted to determine survivorship. (*Vide* the numerous cases cited in Beck's Medical Jurisprudence), on the "presumption of survivorship," which the author considers an "intricate" question.

These cases show the inherent difficulty of reaching any rule upon this subject, in the entire absence of evidence, although in the end the learned author is inclined to the conclusion, that the provisions of the French Code, with some modifications, appear to. be best adapted for administering equitably in the majority of cases that may occur. (Beck's Medical Jurisprudence, vol. 1 [12th ed.], chap. 10, p. 642.) ·

The subject was considered in *The King* v. *Dr. Hay* (1 W. Bl., 640 ; S. C., 4 Burr, 2295).

General Stanwix, his second wife, and a daughter by a former wife, perished in a vessel lost at sea. No account of the manner of the perishing was ever received. Application was made for the granting of letters of administration of the effects of the General to his nephew and next of kin, on an allegation that there were no living children, wife or other relative in the same or any nearer degree. The maternal uncle and next of kin to the daughter claimed the effects under a notion of the civil law, that where parent and child perish together and the manner of death is unknown, the child shall be presumed to survive the parent. The court sustained the nephew's claim, upon the ground of its being for the administration only and not for the distribution of the estate.

An interesting argument in support of the claims of the contestants is found in Fearne's Posthumous Works (page 38, note) ; *Wright* v. *Samada* (2 Salk., 593 ; S. C., 2 Phillimore, 266, note C), one Netherwood made a will, leaving his wife his residuary legatee. He gave her also, his real estate for life, and appointed Samada his executor. His wife died leaving three children by him. In 1779 he married the sister of his first wife, and had issue, one son. In 1791, Netherwood, his wife and son were lost in a vessel that had foundered at sea.

Probate of the will was granted to Samada who was afterwards called upon to prove it, or show cause why the probate should not be revoked, and administration granted to the next of kin of the deceased as having died intestate.

It was claimed on the behalf of the next of kin of the father and husband, that the subsequent marriage and birth of the child revoked the will, and that the presumption was, that the husband and father survived.

Sir WILLIAM WYNNE said : ' I always thought it the most natural presumption that all died together, and that none could transmit rights to another. Then what are the circumstances at his death ? He had neither wife nor children. Therefore there is nothing to raise the implication of revocation at that time. Therefore, taking into consideration, that there was no wife or child at his death, I pronounce for the will.' (*Doe* v. *Nepean*, 5 B. & Ad., 91, 92.)

In *Taylor* v. *Diplock* (2 Phillimore, 261), Taylor and his wife perished in a vessel wrecked in Falmouth harbor. The husband left a will constituting his wife executrix and residuary legatee. A question arose whether the relatives of the husband or wife were entitled to the residue. The brothers and sisters of the husband on the one side, and the mother of the wife on the other side, prayed administration with the will annexed.

The counsel for the next of kin of the husband claimed that the burthen is thrown on the adverse party, to show that there ever was a moment of time in which the property vested in the wife. Sir JOHN NICOLL held, that the burthen was on the person claiming derivatively from the residuary legatee, the wife, to show that the testator left a residuary legatee ; that the next of kin of the residuary legatee is to show that the wife survived the husband. In commenting upon the evidence, the court stated : ' There is no evidence direct as to this point ; some inferences have been deduced. It is stated that the two bodies were found together. This tends to show, that they were in the same situation at the time of death. Upon the whole, I am not satisfied that proof is adduced that the wife survived. Taking it to be that both died together the administration is due to the representatives of the husband. ' I assume they both perished in the same moment, and therefore I grant the administration to the representatives of the husband. I am not deciding that the husband survived the wife.'

In *Colvin* v. *Procurator General* (1 Hagg. Ecc. R., 92), administration of the goods of an intestate drowned together with his

wife and only child, was granted to a creditor of the husband on the presumption that the husband survived, the debt being large and the property small.

*In the Matter of the goods of Henry Selwyn* (3 Hagg. Ecc. R., 748), the husband and wife having been drowned together, the court, the wife's next of kin not opposing, granted probate in common form of the husband's will to the executors substituted in the event of her dying in his lifetime, the will naming her executrix if living at his decease.

*Per Curiam*: 'Instances have occurred, where, under similar circumstances, the question has been, which of the two survived? but in the absence of clear evidence it has generally been taken that both died in the same moment.' *Taylor* v. *Diplock* (*supra*), was cited in support of this conclusion.

*In the Matter of the goods of Robert Murray* (1 Curteis, 596), a husband, his wife and child having perished together, administration was granted of the husband as having died a widower. The husband left a will in which he had bequeathed the whole of his property to his wife. The court, on motion, granted administration with the will annexed to the next of kin of the husband, there being nothing to show that the wife survived, the next of kin of the wife consenting.

In *Satterthwaite* v. *Powell* (1 Curteis, 705), where husband and wife were drowned by the same accident, it was held that the presumption is that they died at the same time, and that in order to entitle the next of kin of the husband to the wife's property it must be shown that he survived her.

Sir HERBERT JENNER said: 'The principle has been frequently acted upon, that when a man dies possessed of property that the right to that property passes to his next of kin, unless it be shown to have passed to another by survivorship. Here the next of kin of the husband claim the property which was vested in the wife. That claim must be made out. The parties must be presumed to have died at the same time, and there being nothing to show that the husband survived the wife, the administration must pass to her next of kin.'

In *Mann* v. *Mann* (1 Merin., 308), an issue was directed to try whether the son was living at the death of the testator, his father,

the father and son having been shipwrecked, and having perished together, it being held that there was no legal presumption of survivorship. (*Durant* v. *Friend,* 5 De Gex & S., 343.)

But by far the fullest consideration has been given to the subject in *Underwood* v. *Wing* (19 Beavan, 459), and on appeal before the chancellor and two law judges (―― 4 De Gex. M. & G., 633). Mr. Underwood devised his real and personal estate to the defendant Wing, his heirs, etc., etc., in trust for his wife, her heirs, etc., etc., absolutely. But the will provided that, in case the wife died in her husband's lifetime then he directed that his real and personal estate should be held by his trustee upon trust for such of his children as, being sons or a son, should attain the age of twenty-one years, and being a daughter should attain that age, to be equally divided among them, share and share alike; and in case all his children should die under twenty-one, then the property was given to William Wing. The testator appointed his wife and Wing executrix and executor.

Mrs. Underwood devised and bequeathed all her estate, real and personal, to her husband, his heirs, etc., etc., absolutely; and her will proceeded in these words : '(Subject to the estates and interests of my children therein, under and by virtue of the will of John Tully, deceased); and in case my said husband shall die in my lifetime, then I devise, bequeath and appoint the said hereditaments,' etc., etc., 'unto and to the use of William Wing, his heirs,' etc., etc. The testatrix appointed her husband and Wing executors.

Underwood, his wife and their three children embarked on a ship for Australia, which foundered at sea, and, with the exception of one sailor, all on board, including Mr. and Mrs. Underwood and their two sons, were washed into the ocean by the same wave. The daughter survived, but perished a short time afterward. All the children died under twenty-one, unmarried.

Wing proved the wills of Mr. and Mrs. Underwood.

The plaintiff obtained letters of administration of the daughter, the surviving child.

Plaintiff insisted that Mr. and Mrs. Underwood died simultaneously, and that the event had not happened on which Mrs. Underwood had bequeathed her property to Mr. Wing; and that Mrs.

Underwood died intestate as to her interest in her separate property, and it belonged to the plaintiff as administrator of the surviving daughter.

Plaintiff also contended that the limitations and bequests in the will of Mrs. Underwood, for the benefit of Wing, were wholly contingent and dependent upon the event which, it was insisted, had not happened — of Mrs. Underwood dying in the lifetime of her husband ; and that, under the circumstances, the clear residue of Mr. Underwood's personal estate belonged to the estate of his daughter, as his sole next of kin surviving him. It was claimed, on the behalf of the defendant Wing, that Mr. Underwood survived his wife, and that her property passed, in the first instance, to the husband, and afterward passed, together with the husband's property, to the defendant Wing.

The Master of the Rolls, among other things, said : ‘All the reported cases concur in this, that in such a state of things, it is impossible for the court to come to any conclusion as to which died first.

‘The result is, that it being impossible, in the absence of any evidence on the subject, to come to the conclusion that one died before the other, no decision can be formed on the assumption that either was the survivor.

‘My opinion is that I must consider that there is no evidence to show me who is the survivor, and the conclusion of law is that I cannot found any decision on the assumption that either was the survivor. The result is, that I think the defendant has not made out that the contingency has arisen on which his title depends, and I must make a decree accordingly.’

Upon appeal, the judgment of the Master of the Rolls was affirmed.

It was there decided that the question of survivorship is the subject of evidence to be produced before the tribunal which is to decide upon it, and which is to determine it, as any other fact, and that there was no evidence to show whether the husband or the wife was the survivor.

The Chancellor, Lord CRANWORTH, on the appeal, in considering the question as to upon whom the burden of proof rests, said : ‘I think the principle once being admitted, that the *prima facie* title is

in the next of kin, that it must rest on the person who claims the property, under a bequest giving it to him in that particular event. It is not for the next of kin to show that the wife did not die in her husband's lifetime ; but that the person who claims under the disposition must show, not that probably it might be one way or the other, but that that state of circumstances did in fact occur which entitles him, according to the language of the will, to say that the wife did die in her husband's lifetime.'

And in *Wing* v. *Angrave* (8 H. L. Cases, 183) after full examination the judgment in *Underwood* v. *Wing* was approved, and the principle of the decision distinctly affirmed.

I have been thus careful to examine and collect together these cases from the English courts, so as to deduce the rule of law applicable to cases of this character. And I conclude that they establish that there is no presumption of law, arising from age or sex, as to the survivorship among persons whose death is occasioned by one and the same cause ; nor is there any presumption that they all died at the same time, and that the burden of proof is on the one asserting the affirmative.

The result is well stated by Mr. Best, in his Principles of Evidence : ' When, therefore, a party on whom lies the onus of proving the survivorship of one individual over another, has no other evidence than the assumption that from age or sex one individual must have struggled longer against death than his companion, he cannot succeed. But, on the other hand, it is not correct to suppose that the law presumes both to have perished at the same moment. This would be essentially an artificial presumption against manifest probability.'

And the American cases, limited in number, are substantially to the same effect. (*Coye* v. *Leach*, 8 Metc., 371 ; *Smith* v. *Croom*, 7 Florida, 81, 180 ; *Pell* v. *Ball*, 1 Chevy [Eq.], 99 ; *Robinson* v. *Gallier*, 2 Wood C. C. R., 178 ; Southern Law Rev., vol. 11 [N. S., 1876–77, p. 594] ; N. Y. Legal Observer, vol. 3 [1845], p. 269.)

In the case of *Moehring* v. *Mitchell* (1 Barb. Ch., 270), the only New York case to which I have been referred, or which I have been able to find on this subject, the chancellor says, upon a certain contingency : ' It would have been unnecessary, perhaps, to inquire

whether there is any legal presumption that the husband survived the wife when they have both perished by the same disaster, and when there is no extrinsic evidence to guide the judgment of the court upon this matter of fact;" but in the case before him, he said it was unnecessary "to inquire whether it must be presumed that the husband survived his wife."

The Chancellor cites the cases of *Taylor* v. *Diplock*, *Alvin* v. *The King's Procurator*, and *Selwin's case (supra)*, as favoring a legal presumption in such a case in favor of the survivorship of the husband, upon the presumed ground, " that the greater strength of the male would probably enable him to sustain life the longest in such a calamity."

But a close examination of those cases shows that their disposition did not turn upon any such legal presumption, but, in reality, upon a failure of satisfactory evidence to establish a survivorship in fact.   And as far as *Sillick* v. *Booth* (1 Young & Col., 117) favors any presumption of survivorship arising from age or sex, it must be considered as overruled by *Underwood* v. *Wing*, and *Wing* v. *Angrave (supra)*, which embraces the most thorough and satisfactory examination of this question.

In the case at bar, there being no legal presumption of survivorship, no rights could have been transmitted by one child to the other, nor to his or her heirs or next of kin, and under the authorities above cited, the burthen of establishing a survivorship rests upon the party who claims any portion of the estate through such fact.   The real contention in this case, as developed on the trial and in the argument of the counsel for the respective parties, involves the principal sum of the three trust funds directed to be invested for the children and husband of the testatrix.

Those claiming as next of kin and heirs of the two children of the testatrix, as well as those claiming to stand in the same relation to the testatrix herself are before the court.   The personal representatives, next of kin and heirs at law of the two children on the one hand, and on the other, the children of Frederick A. Ridgway and Moses Ridgway and the heirs of John and Henry Gunn, make claims radically conflicting.

The claim of the latter is under the will of the testatrix, by which the remainder over in default of heirs of the bodies of the

children and of the testatrix living at the time of the death of the children respectively is devised and bequeathed to them.

The claim of the heirs and personal representatives of the two children of the testatrix is interposed in opposition to the will, and upon the supposed ground of intestacy as to the property in question upon the deaths of the two children. And here they are met by those claiming as heirs at law and next of kin of the testatrix herself, who in such event affirmatively claim the estate.

If the claim of the heirs at law and personal representatives of either of the two children be founded upon the notion, that one child left the other surviving as the living heir of the body of the testatrix, and as such, entitled to the share held in trust for the life of the deceased child, the onus of proving the fact of such survivorship would doubtless rest upon the party affirming such fact.

But the claim made by the representatives of the two children and their heirs at law is, that upon the death of the testatrix the whole estate embraced in the trust descended to and vested in the two children as her sole heirs at law, and remained so vested, subject to the execution of the trusts or powers created and imposed for the life of each, which estate for life terminated at the death of the children, and that the burthen is cast upon the remaindermen to prove the happening of the events or contingencies, or the existence of the defaults which entitle them or any of them to the whole or any part of the estate. In other words, that it is cast upon them to prove, not an affirmative fact of survivorship, but rather a negative, that there was, in fact, as to the children, no survivorship.

For if there was no survivorship, if both children perished in the same moment, then there was no living heir remaining of the body of the testatrix. This involves a construction of the will.

It seems reasonably clear, under the provisions of the will, that it was not the intention of the testatrix to vest the substance of her gifts in her children or her husband, but in the issue of her children, and in default of issue in those whom the children should appoint, and in default of such appointment and of heirs of her body, in those in whose favor the remainder over was limited.

Not only by the express terms of the will, but also by a neces

sary implication, arising from the duties imposed. The title to the estate in question vested in the trustees and must needs continue in them until the purposes of the trust were accomplished, and that at least so long as the children lived. No title or interest in law vested in the *cestuis que trust*, the children and husband of the testatrix. They acquired equities under the will, but no legal estate in the property itself. (1 R. S., 729, § 60 ; *Amory* v. *Lord*, 5 Seld., 403 ; *Knox* v. *Jones*, 47 N. Y., 396.)

To hold that the title to this property vested in the beneficiaries would, I think, be in manifest opposition to the intention of the testatrix.

From the death of the testatrix the legal title was in the trustees and so remained until the death of the children and husband, and the heirs at law and personal representatives or next of kin of the children take nothing under the will unless one child died in the lifetime of the other, in which event the personal representatives of the surviving child would administer, under the statute, its share in the personal estate to which it was entitled as the only living heir of the body of the testatrix, and the heirs at law of the survivor would succeed to its share of the real estate.

But the burden of proving such survivorship, as already stated, must rest upon those who affirm the fact and claim thereunder.

The trust was active and legal in its inception and purposes, as was the disposition over of the remainder, and on the happening of the contingencies contemplated, that is, upon the death of the children without issue and without heirs of the body of the testatrix then living, the estate in the trustees was ended and the remainder over vested in possession in those in whose favor it was limited.

In the cases of *Underwood* v. *Wing*, and *Wing* v. *Angrave* (*supra*), one of the conditions upon which the estate over was given to Wing was, that Mrs. Underwood should die in the lifetime of her husband. This was considered to be a condition precedent to the consummation and vesting of the gift. In that case a child (the daughter) survived, for a brief period, her parents and brothers. Failing the gift over, she, as next of kin and heir at law, became legally invested with the estate. She had the *prima facie* right to the property, and claim was made by her legal

representatives. The daughter's right to the property was abso-
lute, unless the property was conveyed away by the will. Hence, it
was incumbent upon those claiming under the will, to show that the
condition upon which the estate was given to Wing, namely, the
death of the wife in the lifetime of her husband, had occurred.
In the case at bar, the gift over is a contingent estate in remainder,
depending upon the ultimate event of there being no heirs of the
body of the testatrix at the death of her children (1 Rev. Stat.,
723, §§ 9, 10, 11, 13; *Powers* v. *Bergen*, 6 N. Y., 360; *Leslie* v
*Marshall*, 31 Barb., 560), and is construed to be a conditional limi-
tation. A remainder may be limited on a contingency, which, in
case it should happen will operate to abridge or determine the
precedent estate, and every such remainder shall be construed a
conditional limitation and shall have the same effect as such limita-
tion would have by law. (1 Rev. Stat., 725, § 27.)

And a conditional limitation carries the estate over to the persons
to whom it is limited upon the happening of the contingency. (4
Kent's Com., 127; Washburne on Real Property, vol. 11, pp. 20, 22,
and cases cited.)

If, upon failure of that upon which the estate is made to depend,
no matter how expressed, the land is to go to a third person, this
is a limitation over and not a condition.

It was an inflexible rule of the common law that the remainder
must vest at the moment — if not sooner vested — of the determina-
tion of the precedent estate, or else it could not vest at all. (*Camp-
bell* v. *Rawdon*, 18 N. Y., 418.) Such estates were liable to be
defeated by circumstances subsequent to their creation, but the
validity of the limitation is never questioned. (Id.) But for the
subsequent limitation to the Ridgways and Gunns the property would
have passed to the residuary legatees or heirs at law. But that
limitation does not fail because the precedent estate did not take effect.

Where a devise is limited to take effect upon a condition or con-
tingency annexed to a preceding estate, if that preceding estate
should not arise the remainder over will take place — the first estate
being considered as a preceding limitation and not as a preceding
condition. (*Norris* v. *Beyea*, 13 N. Y., 287; *Warren* v. *Rudall*,
4 Ray & Johnson, 603; S. C., Law Journal [1859, N. S.], vol. 28,
part 1, p. 70; *Buckworth* v. *Thirkell*, 3 Bos. & Pull., 652; note.]

As when a testator meant to dispose of all his property and uses the words " if the legatee should not survive," held to mean " if the preceding legacy should from any cause fail." (*Avelyn* v. *Ward*, 1 Vesey, Sr, 419; *Rickman* v. *Morgan*, 2 Brown's Ch. Cas., 396; *Jones* v. *Westcombe*, 1 Eq. Abbt., 245; *Foster* v. *Cook*, 3 Brown's Ch., 347; *Doo* v. *Brabant*, 3 Bro. C. C., 397; *Taylor* v. *Taylor*, A. & R., 386; *Jackson ex dem. Beach* v. *Durland*, 2 Johns. Cases, 314.)

The disposition made by the will of the property during the lives of the children being legal, in whom could the estate vest under the facts when liberated from the trust by the death of the children, other than those to whom the remainder was limited? No one can lawfully claim in opposition to the remainder-men, except through one of the children as a survivor. For unless one child survived there was no living heir of the body of the testratrix. There can be no new stock of descent except through a surviving child, and in order to lay the foundation for such claim the fact must be proven by the person claiming. There can be no presumption of such survivorship.

In the case of *Underwood* v. *Wing*, there was a child who survived, who, as heir or next of kin, had the *prima facie* right, and through whom her legal representative and next of kin claimed.

Here there is no evidence of the existence of a surviving heir of the body of the testatrix through whom his or her legal representatives or next of kin may claim through a *prima facie* right. Who are the heirs or next of kin in whom the legal estate can vest, to the exclusion of those in whose favor the remainder is limited? And of whom are they such heirs or next of kin — the son, or the daughter? They might be such as well of the son as the daughter.

It is the merest speculation or conjecture as to whether there was a survivorship at all, and both cannot be entitled. Nor is the necessity of proving a survivorship wholly obviated through an attempted solution of the difficulty by adjudging an intestacy as to the remainder at the death of the children. In such condition the obstacle is not overcome, but only postponed. The legal title was not in the children, and they had nothing, if they perished in the same moment, to transmit.

In the case of *White* v.` *Howard* (*infra*) it was held that a remainder in four-sixths of the real estate of the testator, contingent upon the death of his daughter leaving no descendants her surviving, was not embraced in the trust created by the testator, as the devisees were incapable of taking, and the remainder was undisposed of by the will. The daughter was the sole heir. She became seized at the death of the testator of this remainder as the heir of her father; and being so seized, upon her death the estate went to her heirs. But it is obvious that this result was reached only through the original invalidity of the devise over, the devisees, four charitable societies, being incapable by law of taking by devise. But in the case we are considering there is no inherent invalidity in the gift, as the remainder-men are capable of taking.

But if it be adjudged that from the difficulty only in carrying it into effect, and not from any invalidity on the part of the persons to take the remainder, the testamentary disposition must fail, then the next of kin and heirs at law of the surviving child would, in the first instance, take. But if the life estate was terminated by the death of both in the same instant — they being not seized or possessed of the estate — then the heirs at law and next of kin of the testatrix take.

But they can only take on the contingency which limits the remainder to the children and heirs of the Ridgways and Gunns; and such adjudication, while it would clearly defeat the intention of the testatrix, would work needless injustice.

In *Wright* v. *Samada*, *Taylor* v. *Diplock*, and *Satterthwaite* v. *Powell* (*supra*), the effect of the decisions is to cast the burden of proof upon the next of kin who derive title through a survivorship of one out of several lost in a common calamity, to prove the fact.

The intention of the testatrix is clear. She desired that her property should go, in the first place, to her direct descendants, heirs of her body, and only when there was no such descendants, it should go to her collateral blood relatives designated by her.

Those who claim affirmatively that at the respective deaths of the two children there were heirs of the body of the testatrix, through whom they are entitled to succeed, must show it.

Those to whom the remainder is devised and bequeathed make out a case to entitle them to the estate, when they prove the loss of

the issue of the body of the testatrix by the same disaster, as under such circumstances, without proof of survivorship, the default contemplated has occurred — the limitation to the heirs of the body of the testatrix has failed, and the remainder over to the Ridgways and Gunns must be held to have taken effect.

The question whether the real estate, by the provisions of the will, was equitably converted into personal, was argued on the hearing.

To constitute a conversion of real estate into personal, in the absence of an actual sale, it must be made the duty and be obligatory upon the trustees to sell in any event; a mere discretionary power of selling produces no such effect. ( *White* v. *Howard,* 46 N. Y., 144, 162.)   I do not find in the will any such absolute duty or obligation to sell.   The direction is to set apart, sell, mortgage, lease or otherwise dispose of same, as by the trustees might be deemed advisable They doubtless had the power to sell, but were not obliged to do so, if in their judgment the purposes of the will could be accomplished by setting apart, mortgaging or leasing.   And not having been sold there is no equitable conversion of the real estate, and the property must be viewed as it was at the death of the testatrix. (*Harris* v. *Clark,* 3 Selden, 242.)   But under the views above expressed, I do not see that it changes the result, whether the property was equitably converted or not.

By the expression in the will, " to the children or heirs of Frederick A. Ridgway, Moses Ridgway, John Gunn and Henry Gunn," is meant to the children or heirs of each of those persons.   Any other construction would be contrary to the evident intention of the testatrix, especially so in view of the fact in evidence, that John Gunn had been dead several years when the will was executed. The devisees take *per stirpes,* and not *per capita ;* and one-fourth part of the estate in remainder belongs to the children or heirs of each of the persons above named.   (2 Kent's Com., 425 ; *Bool* v. *Mix,* 17 Wend., 119 ; *Fissel's Appeal,* 27 Penn. Stat. R., 55 ; *Bassett* v. *Granger,* 100 Mass., 348.)

The legacies of $5,000 to Alfred Baumgarten and of $3,000 to Mrs. Louisa Bartlett are valid, and should be paid, if not already satisfied, before any distribution of the estate between the persons to whom the remainder is given.

The silverware belonging to Mrs. Walter, and in the possession of the executors, under her husband's will, should be delivered to her surviving executors, to be disposed of by them as a portion of her estate. The case shows that the trustees did not sell the real estate, or create, by a conversion of the property of the testatrix, the investments contemplated by her for her children and husband. Their efforts to sell the real estate to this end, proved unavailing. There is no proof of any negligence on their part in this matter, and it is urged, on their behalf, that the whole estate was not of a sufficient value to raise the amounts.

The rule is, without doubt, that where trustees, under a will are directed to make investments to a specific amount out of property and funds sufficient for the purpose — the income of which is directed to be paid to persons designated, that such persons are entitled to legal interest on the amount directed to be invested. Sometimes, however, the rate is adjusted at five or six per cent. But if the estate was insufficient to raise the funds for such investment, such rule is not applicable.

No investment having been specifically made, and the character of the estate as it came into the hands of the trustees not having been materially changed, the income of the whole estate, after payment of debts and specific legacies, should be passed to the credit of the *cestui que trust* up to the time of their death, to an amount equal to six per centum per annum upon the sum directed to be invested, from the death of the testatrix. But if insufficient to pay such amount, I do not think that the deficiency should be made a charge upon or be paid out of the corpus of the estate. The value and condition of the estate does not justify any such direction.

If correct in the view above expressed, the power of sale with which the executors were clothed, cannot now be exercised, as the realty has passed over to those to whom the remainder was given. The power to sell was given only to raise the moneys, out of which the investments directed were to be made. But as that exigency now no longer exists, the *cestui que trust* being dead, there is no occasion for the exercise of the power.

Nor is any conveyance from the trustees necessary, as their estate terminated with the death of the father and children. A reference

is needed to pass upon and settle the accounts of the executors and trustees, to the end that they may be relieved of future duty and care, and the estate closed. Which reference may extend, if it be desired, to an inquiry as to the nature and value of the estate at the death of the testatrix, and as to what, if any, part thereof has been sold or otherwise disposed of, and as to its present value and condition, and the income received therefrom and the charge thereon.

The particulars of the reference to be settled by the judgment to be entered therein."

Our examination has led us to the same conclusions reached by Mr. Justice VAN VORST, both upon the law and facts of the case. The questions involved are intricate and interesting. The opinion above quoted discusses them with marked clearness and ability, and exhibits the most commendable care and research.

We are not disposed to impair its value to the profession by entering upon any new or further discussion, but content ourselves with adopting it as a full and satisfactory expression of the views of this court.

The judgment appealed from should be affirmed, but under the circumstances of the case the costs of the appeal on both sides should be paid out of the fund.

Ordered accordingly.

DANIELS and BRADY, JJ., concurred.

Judgment affirmed, with costs of appeal on both sides to be paid out of the fund.