## HART *v.* UNION CITY.

### (*Jackson.*    June 15, 1901.)

VERDICT.    *Not set aside, when.*

This Court will not set aside a verdict in favor of the defendant for want of evidence to support it, in an action by a widow to recover damages for the negligent killing of her husband, when there is no direct evidence of the manner of his death and the circumstances make it as probable, to say the least of it, that he died from natural causes—heart disease—as from defendant's negligent act.

---

FROM   OBION.

---

Appeal in error from Circuit Court of Obion County.

YANDALL HAUN and WADDELL & WADDELL for Hart.

MOORE & WELLS for Union City.

WILKES, J.    This is an action of damages for the negligent killing of the plaintiff's husband and intestate.    There was a trial before the Judge, in the Court below, without the intervention of a jury. Upon request, properly made, the trial Judge made a written statement of his findings of law and fact. He held the city not liable under the record, and dismissed plaintiff's suit, and she has appealed and

assigned errors. The finding of facts by the trial Judge is very full and elaborate, and we will only mention a few features of importance. The real defense on the merits is that there is no evidence to support the finding and judgment of the trial Judge.

The intestate was a night policeman of Union City, and had been for three or four years. On the morning of January 15, 1899, he was found dead on the floor of the city calaboose. There was nothing to positively indicate how he came by his death. There were two small burns upon one of his hands, but which does not definitely appear, but they were so small as not to be at first noticeable. The deceased was a large man, weighing some 220 to 225 pounds, a habitual smoker, but only an occasional user of beer and liquors. He had been heard to complain on several occasions of a trouble with his heart. It appears that, on the evening before the death, he went to the superintendent of the city light plant and obtained a new globe, to be placed on the drop cord in the station house. This was found in his pocket after his death.

The theory of the plaintiff is that, in attempting to put this globe on and screw it into its socket, he received an electric shock which caused his immediate death. It appears that the drop-cord upon which this globe was to be fastened was only designed for the carriage of 104 volts of electricity; and that it would not be dangerous for a well man to receive this amount into his system, so that put

ting the globe on was not dangerous, nor could death have been caused if the other apparatus of the. light plant was in good and perfect condition.

It is shown, however, that there were two lines of wire—one called the primary line, and the other the secondary circuit; the former charged with 1,040 volts, and very dangerous, and the other with only 104 volts, and, as stated, not dangerous.

The insistence is that the wires of the two circuits had, at some place and in some way, become crossed, and the primary wire, at the same time, grounded, so that, when the deceased touched the drop-cord, he received the whole discharge of the primary current and was instantly killed.

No definite, positive proof of such a condition of things is made, but there is some evidence that, on the day prior to this, there had been some crossing or sagging of wires in the city, which caused disturbances along the lines ; but the evidence very clearly shows that all of these troubles had been remedied and repaired and none of them existed when the accident took place. There is, also, evidence tending to show that there was some disturbance during the day at Crossners fruit stand, which was on the same short line with the calaboose, but these do not appear to have been of a serious character, and certainly were not dangerous.

The argument, which is very ably pressed, is that there must have been some defect or disturbance of this kind, because the death could not be accounted

for in any other way. The trial Judge was of opinion that, from the position in which the body was found, it might be reasonably inferred that the death was so caused, but that it could not have been caused by the secondary current alone, unless the heart of the deceased was affected; nor was there any proof to show the crossing of the currents and the passage of the primary current into the deceased's body; in other words, that the plaintiff had not been able to show such a state of things as would justify a finding that deceased was killed by electrity, and that it was equally as reasonable to conclude that it was the result of heart failure.

Without going at length into the evidential facts in the case, we are satisfied plaintiff has not been able to make out her case. Indeed, we are not able to see that she has even established a *prima facie* case. On the other hand, the city has shown that, at the time of the death, there was nothing the matter with the electric light lines that would make them dangerous. This is shown by the testimony of the Superintendent and Engineer, by their experiments made immediately after the deceased was found, and by the physical facts which they recite, and numerous details which are given, and which, we think, show affirmatively that the plant was in safe working order, and the death was not shown to have been the result of defects in the construction or operation of the plant.

It may be that the death was caused by such a condition of affairs, but we think the plaintiff has not been able to show it, and the Court cannot presume it, because that would be a reasonable explanation of the death, especially when there is another equally as reasonable and plausible — that is, death from heart failure. We think that the examinations made of the plant and wires and circuits immediately after the death, were sufficient to overturn any *prima facie* case, if one had been made out, which we do not think was done. The nearest approach plaintiff is able to make towards showing defects in the line, is the fact that there was a disturbance at Crossner's fruit stand, which was on a short circuit between the transformer and the station house. But several persons received shocks from the wire at Crossner's and were not injured, and the conditions at that place, the light being out of doors and persons touching it being on the ground, made that more dangerous than the light in the station house. In addition, it is shown that the transformer was in good condition, and there is not only no proof to show how the primary current could get on the secondary circuit, but the evidence clearly demonstrates that, as a fact, it did not, and could not do so. If, therefore, a presumption could arise, from the position in which the body was found, that death was caused by the electric wire, that presumption is overthrown by proof that the wires were in good condition and that no defect existed.

Hart v. Union City.

Plaintiff's counsel has made a very able and ingenious argument to sustain his theory and has shown a thorough knowledge of electrical conditions and phenomena, but he fails at the threshhold to show any contact with the wire, or any disturbed or improper condition of the wires, and is met by the positive proof of the city showing the perfect condition of the plant, and the improbability, if not impossibility, of the death being caused by an electric discharge.

The judgment of the Court below is affirmed with costs.