### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

### EASTERN DIVISION.

## KNOXVILLE, SEPTEMBER TERM, 1907.

WALTON & COMPANY *v.* S. E. BURCHEL, Administrator.

(*Knoxville.* September Term, 1907.)

The opinion in this case, though decided at the September term, 1907, was just recently filed for publication.

1. **EMPLOYER AND EMPLOYEE.** Burden rests on plaintiff to show that death of employee was caused by negligence of employer's foreman, when.

   In an action for a wrongful death of an employee based upon the ground of the negligence of the employer's foreman, as a vice principal, the burden rests on the plaintiff to show by a preponderance of the evidence that the explosion of dynamite resulting in the death was caused by some negligent act of the foreman. (*Post, p.* 723.)

2. **VERDICT.** In determining question of refusal of peremptory instructions, the strongest legitimate view of evidence in favor of verdict approved by trial judge must be taken as true.

   After a verdict and judgment thereon in favor of the plaintiff, the supreme court, in determining the question whether the motion for peremptory instructions refused by the trial judge

should have been granted, will take as true the strongest legitimate view of the evidence in favor of the verdict, and discard all countervailing evidence. (*Post, p.* 723.)

Case cited and approved: Machinery Co. v. Hargraves, 3 Cates, 476, 484, 485.

3. **EMPLOYER AND EMPLOYEE.** Negligence of employer's foreman, as a vice principal, may be proved by circumstances, in action for death of employee.

In an action for a wrongful death of an employee based upon the ground of the negligence of the employer's foreman, as a vice principal, if there is no positive and direct evidence that the foreman was guilty of the particular act of negligence, and no evidence to show what that negligence was, like any other act of negligence, it may be proved by circumstances. (*Post, p.* 723.)

4. **SAME.** Same. Facts warranting inference that premature explosion of dynamite was caused by negligence of employer's foreman resulting in death of employee.

In the case stated in the preceding headnote, where there was an explosion of dynamite without any known particular cause for it, and it is shown that dynamite will not explode "without somebody having caused it," or without some known cause, and where the foreman was shown to be exceedingly reckless and careless with dynamite and other explosives, and, to be considerably intoxicated, and was standing near the dynamite placed for the explosion, with a stamping stick in his hands, when a premature explosion thereof occurred causing the explosion of a large quantity of dynamite, by him carelessly and negligently left near, which killed the foreman, and the plaintiff's intestate and two others, who were all that were near the place, from which, together with all the proven circumstances, the legitimate inference could be drawn that the foreman was guilty of the negligent act which caused the explosion, so that there was some very material evidence from which the jury could conclude that the explosion was caused by the negligence of the foreman. (*Post, pp.* 723-728.)

Cases cited and distinguished: Railroad v. Lindamood, 111 Tenn., 457; United States v. Ross, 92 U. S., 381.

Walton v. Burchel.

5. **SAME.** Same. Same. Action lies for wrongful death of a young employee caused by negligence of his father as foreman of the employer.

The action for the wrongful death of the employee under the circumstances shown in the two preceding headnotes is not defeated by the fact that the employee was the son of the foreman, where he is under sixteen years of age, and dominated by his father, and had not been instructed in the use and danger of dynamite, especially where he sees that his father, notwithstanding his reckless conduct and habits, had the confidence of his employers. (*Post, p.* 728.)

6. **SURVIVORSHIP.** Not presumed on account of age, sex, strenth, corpulency, or activity of those perishing in a common disaster.

Where persons perish in the same common disaster or calamity, there is no presumption of survivorship resting upon considerations of age, sex, strength, corpulency, or activity, and in the absence of evidence from which survivorship can be determined, it will be presumed, for the purpose of settling rights and succession to property, that all persons perishing in such disaster died at the same time or moment. (*Post, pp.* 728-733.)

Cases cited and approved: Home v. French, 187 U. S., 401; Note in Association v. Ryce, 104 Am. St. Rep., 210, and citations; Re Willbor, 20 R. I., 126, and note in 51 L. R. A., 863.

7. **SAME.** Same. Right of action for wrongful death of a boy perishing with his father in a common disaster survives to his mother, brothers, and sisters, where he left no widow or children, when.

Where a boy perishes at the same time with his father in a common disaster caused by the defendant's negligence, leaving no widow and children, but leaving his mother, brothers and sisters surviving him as his next of kin, the right of action for his wrongful death survives to his personal representative for them. (*Post, pp.* 728, 733.)

Walton v. Burchel.

FROM CAMPBELL.

Appeal from the Circuit Court of Campbell County.—G. Mc. HENDERSON, Judge.

LUCKY, SANFORD & FOWLER, and J. WILL TAYLOR, for Walton.

PICKLE, TURNER & KENNERLY, and R. M. HARRELL, for Burchel.

*MR. SPECIAL JUSTICE HENDERSON delivered the opinion of the Court.

This is an action for damages for the death of Burchel, intestate of defendant in error, caused by a premature dynamite explosion in the construction of the Knoxville, Lafollette & Jellico Railroad. There was verdict and judgment in favor of defendant in error for $1,650, and plaintiffs in error have appealed and assigned errors.

At the conclusion of the evidence of defendant in error before the jury, plaintiffs in error moved for instructions in their favor; this was refused; the motion was renewed at the conclusion of all of the evidence, and was refused. The second assignment of error is to this action of the trial judge.

---

* Mr. John H. Henderson, of Franklin, Tennessee, was appointed and duly commissioned by the governor, April 8, 1907, to sit as special judge during the sickness of Mr. Justice Wilkes, and served as special judge until the death of Mr. Justice Wilkes, on the 2d day of February, 1908.

Walton v. Burchel.

Plaintiffs in error were contractors for the railroad company, and had undertaken the work of constructing a part of the road. This work consisted in the excavation of earth and stone, which required the use of dynamite as an explosive. The duties of the intestate of defendant in error were those of a helper and ordinary hand or laborer and consisted in digging and transporting dirt and stone, and preparing stone for blasting; but it was no part of his duty to store or handle the dynamite further than the same is done under the immediate control and direction of the boss or foreman of the plaintiffs in error.

It is averred that the intestate of defendant in error was a minor, inexperienced, and uninstructed in the handling of such explosives, and not acquainted with the dangers incident thereto; that it was the duty of the boss or foreman to superintend their use, which he undertook to do; and on account of his negligence in this particular, said intestate lost his life.

It is further averred that large quantities of dynamite were negligently exposed by the foreman, without sufficient safeguard, near the place where said intestate was at work; that the foreman knew defective and improper instruments for the purpose of tamping, packing, and removing the dynamite, and used same in a negligent manner, producing a premature explosion of a small quantity of dynamite, causing the explosion of a large amount negligently placed near, resulting in the death of said intestate.

The second count contains the additional averments that the explosion was caused, first, by the failure of plaintiffs in error to provide a safe and good quality of dynamite; second, that said foreman was incompetent, negligent, and reckless; this had been evidenced by acts of recklessness prior thereto, of which plaintiffs in error knew; yet notwithstanding this, he was placed in position of the highest responsibility with reference to the handling, use, and care of the dynamite, and that said intestate did not know of his incompetency.

Plaintiffs in error were excavating a cut in the construction of the railroad. The work was begun on each side at the same time. J. H. Burchel, the father of said intestate, as foreman or boss, was in charge of one crew of hands beginning on one side, and Hugh Jordan was in charge of the crew beginning on the other side, and they had worked up to within about six or eight feet of meeting. J. R. Johnson, known as the "walking boss," had the supervision of both crews, and employed the bosses or foremen, the latter having the right to employ hands under them, and to discharge them.

The cut upon which they were at work was about forty-five feet deep, and they had to make the excavation through limestone rock and dirt. Dynamite was the explosive used. The foreman had charge of the dynamite, and gave instructions as to its use. If he did not handle it himself, it was his duty to have a safe, reliable man to do that; but its use was directed under his personal supervision.

The dynamite is kept in a magazine some three or four hundred yards from the place of the work; when any is needed for blasting, it is the duty of the foreman to provide a safe and reliable man to go for it. When that which is needed for making the blast is put in proper position, the other dynamite should be removed in order to prevent the jar of the blast from causing that to explode.

Dynamite is in sticks about ten inches long, weighing a half pound. When the whole is ready for the blast to be made, the number of sticks necessary are placed therein; a wooden stick or pole about one inch in diameter and from seven to ten or twenty feet long, as may be needed, is used to tamp the dynamite and settle it down in its place. This tamping should be done very lightly. The cap, or fuse, or explosive, is then put in, then some tamping, and the dynamite is ready for the battery to be applied. It is the duty of the foreman to load the hole. Where he does not do it personally himself, he should provide a safe man for the purpose, and should superintend it.

There is some conflict in the evidence as to the exact cause of the explosion, or the manner in which it occurred. The witness Ridenour was engaged in laying the track upon which to run the cars for carrying out the dirt and rock. There was some rock in the way of laying the track, and Burchel, the foreman, ordered the witness to dobe it, to get dynamite and place mud blasts

121 Tenn—46

on it, which he did, placing nine sticks on the larger rock, and three on the smaller. The witness testifies: "He (Burchel, the foreman) picked up a crowbar and walked up to about six feet from me, I guess, and commenced punching in the rock. It seemed to be a solid bench, except a crevice and some mud—and he was punching in there with a crowbar, and turned around after he punched a little while and hollowed and told McNeally to fetch him a case of dynamite, a box of caps, and a fuse, and McNeally brought them."

A case contains fifty pounds of dynamite, or one hundred sticks. The mud blasts referred to were prepared by placing the sticks of dynamite on the rock and putting mud on them. Burchel, the foreman, had used a bar in jobbing down in the holes or crevice of the rock to prepare the place for the dynamite. After he had placed some of the sticks in the hole, he picked up a wooden stick some larger than a hoe handle, cut for a tamping stick, which was about seven feet long. The witness says he was punching or jobbing "pretty hard."

The foreman should have had removed to a safe distance the case of dynamite, while he was doing what is above stated, but it was not done. He called for a cap and fuse, and as he turned to the mud blasts, there was an explosion, as result of which the intestate of defendant in error was killed, and three others, including the foreman. There was evidently a premature explosion of the small blast which caused the explosion of the dynamite in the case.

Just what the foreman did to cause the explosion does not appear with certainty. In order that the action may be maintained, the burden is on defendant in error to show by a preponderance of the evidence that the explosion was caused by some negligent acts of the foreman. This jobbing with the bar and stick, which the witness saw, did not do it. Then what other facts are shown in the record upon which the verdict of the jury could have been based? In determining the question as to whether the motion for peremptory instructions should have been granted, we must take as true the strongest legitimate view of the evidence in favor of the verdict, and discard all countervailing evidence. *Machinery Co.* v. *Hargraves,* 3 Cates, 476, 484, 485.

If we have not the positive, direct evidence that the foreman was guilty of the particular act of negligence, and evidence to show what that act was, like any other act of negligence, it may be proven by circumstances. The foreman lost his life by the explosion, as did three of the bystanders. He and some of these were they living, could furnish the evidence. As they cannot speak, we will have to look elsewhere.

Dynamite is an exceedingly dangerous explosive, it requires very great care in the handling of it, both in loading for the blast and in adjusting the cap, and should never be undertaken save by one who has had experience and is careful and cautious. It is shown that this foreman was a man of the most reckless character; reckless of his own life and that of others in the use

of dynamite. He had on the day before provided himself with a half gallon of liquor; was drinking on that day, and was evidently considerably under its influence. He had an ambition to outstrip Jordan and his crew, who were working on the other side of the cut. On Saturday before the explosion, on Monday, he had said "He would beat the Jordan boys through that cut, or that he would kill every damn man that he had." And one of the men at work under him, who heard the remark, refused to return to work.

He was a violent, overbearing, dictatorial, profane man. He was exceedingly reckless and careless in the use of explosives, was in the habit of smoking his pipe while handling large quantities of powder; had frequently put off blasts without warning his men, and would curse and abuse his men for being so afraid to die.

There were one hundred sticks of dynamite in the case. The witness Ridenour had used twelve of these to make the mud blasts. This left eighty-eight, of which the witness says the foreman had put into the hole where he was jobbing but very few, he thinks not over three or four sticks, and the rest were still in the case. There was evidently the initial explosion of the smaller quantity which produced the jar and caused the explosion of those in the case. Just precisely how it was done cannot be proven, because all of the eye-witnesses were killed. Some of the witnesses say that sometimes a very slight jar will cause an ex-

plosion, sometimes it takes a harder jar.   Morris, the
engineer of plaintiffs in error, says that it is very rare
that there is an explosion without some known cause.
Raines, witness for defendant in error, has been at work
with dynamite for fifteen years, and says that he never
knew of an explosion "without somebody having caused
it."

Evidently something was done which should not have
been done that caused the premature explosion.   What-
ever it was, it was done by Burchel, the foreman.   It
would have been strong evidence in favor of plaintiff
in error that the explosion occurred from some unknown
cause, by some unavoidable accident that could not have
been provided against, had he been the prudent, careful,
and cautious man which the occasion imperatively de-
manded.   But he was not.   In addition to being a reckless
man in the use of dynamite, he was evidently under the
influence of strong drink, and had been guilty of reckless
conduct immediately preceding the explosion; so the
jury thus had some evidence, and some very material
evidence, from which to conclude that the explosion was
caused by the negligence of the foreman.

In addition to this, when the hole is prepared for the
blast, it is proper to bring from the magazine only the
number of sticks of dynamite that may be reasonably
needed for the purpose, and they should not be brought
until the hole is ready.   If more be brought than is
found to be needed, the excess should be removed before
the blast is made, as it is very dangerous to have other

dynamite near when the explosion occurs. There is evidence tending to show this, though Morris, engineer for plaintiffs in error, says that usually they bring out a box, take out that which is needed, and carry the box back to the magazine. But none should be brought until the hole is prepared, ready to be charged.

In this instance Burchel had the whole box or case brought out before he was prepared for the blast, although he evidently knew that but a few sticks would be needed; this was negligence, and the presence of this case, when the explosion occurred, caused the death of the intestate.

What is above said does not conflict with the rule in *Railroad* v. *Lindamood,* 3 Cates, 457. In that case there was an injury to the brakeman claimed to have been caused by a defective brake, but there was no proof that the brake was defective. The witnesses were permitted to say that they presumed a defect in the brakestaff, because in its turning, it lurched and jerked. And on this presumption, they then infer that it would not have done so, save for the existence of one of the defects alleged in the declaration or some other defect; and it is said:

"Inferences may be drawn from established facts, but never from mere presumptions. 2 Whart., Ev., section 1226. As said by the supreme court of the United States in *U. S.* v. *Ross,* 92 U. S., 381, 23 L. ed., 707, these were 'inferences from inferences; presumptions resting on the basis of another presumption. Such a

Walton v. Burchel.

mode of arriving at a conclusion of fact is generally, if not universally, inadmissible. . . . The law requires an open, visible connection between the principal and evidentiary facts and the deduction from them, and does not permit a decision to be made on remote inferences.' "

Such is not the case at bar. There is no proof that the dynamite was defective; on the contrary, it is shown to have been purchased from reputable manufacturers, and that the master had done his duty in this particular. It is not left simply as a matter of inference that the explosion occurred through the negligent act of the foreman. In addition to the proof of his previous reckless character and habits, and the facts that he was evidently more or less under the influence of strong drink at the time, just the moment before he was guilty of negligent acts which were liable to produce a premature explosion. These were "established facts," from which, together with all of the circumstances and proof, the legitimate inference could be drawn that he was guilty of the negligent act which caused the explosion, although no living witness saw it. This is strengthened by the proof of positive negligence in having so much dynamite near the place where the blast was being prepared.

It is shown, as above stated, that Burchel, the foreman, was a drinking man, exceedingly reckless. His character and habits were well known to Johnson, the walking boss and superior of the foreman, and were

thus known to plaintiffs in error. As a matter of fact Johnson had drank with him. Johnson had been urged by some of the men to discharge him on account of his recklessness.

It is argued by plaintiff in error that these matters were well known to the intestate, who was his son; and having this knowledge, and continuing in the service, he will be held to have assumed the risk.

The boy was three months less than sixteen years of age; of course under the influence of his father, and was evidently dominated by such a man as he is proven to have been. It is averred in the declaration that the boy was ignorant of the use and danger of dynamite; and there is evidence tending to show that his father had given no instructions to him along this line. It would surely be too harsh an enforcement of the rule to repel the child for failure to distrust his natural protector, especially when he sees that his father, notwithstanding his reckless conduct and habits, had the confidence of his employers.

It is next insisted that defendant in error cannot recover, because the father survived the intestate, and being sole beneficiary, the entire cause of action abated, and that the surviving mother, brothers and sisters of the intestate, have no right of action. This is a part of the assignment of error which we are now considering; it is included also in the sixth assignment of error, which is to the charge of the court on the subject, as follows: "But when the proof shows that two persons

Walton v. Burchel.

are killed in a common, sudden disaster, the presumption is that they died simultaneously, that is, that they both died at one and the same time. Still this presumption is a presumption merely, and is not conclusive upon the court and jury; and it is still a question of fact for the jury to determine; you may look to all the proof in this case and see whether J. H. Burchel survived C. E. Burchel, or whether C. E. Burchel survived J. H. Burchel, or whether under the proof you believe that the presumption above referred to maintains, and that both died at one and the same time. If you find that J. H. Burchel survived C. E. Burchel, was alive after C. E. Burchel was dead, then plaintiff cannot recover; but if you are of opinion that C. E. Burchel survived J. H. Burchel, or that they both died at the same instant of time, then plaintiff can maintain this suit so far as that question may affect her right of recovery. But you will find how this fact is from the proof; if you fail to find from the proof that the father was alive after the son had died, then you will be warranted in finding that both died at the same time under this presumption of the law, and this should be your finding unless the evidence shows to the contrary."

The evidence before the jury as to which survived, the father or son, is conflicting. There is, however, ample evidence to sustain the verdict that the two perished at the same time; there is thus presented the question of the right of defendant in error to maintain the action.

In the absence of evidence as to which died first, there is no presumption in favor of either, the presumption being that both died at the same time. In such case, the question of actual survivorship is regarded as not capable of determination, and descent and distribution take the same course as if the deaths had been simultaneous.

There is a carefully prepared note to the case of *Policeman's Ben. Assn.* v. *Ryce,* 104 Am. St. Rep., 210, in which quite a number of authorities on the subject are cited, among them, the following: "At common law there is no presumption of survivorship in case of persons who perish by a common disaster, and in the absence of evidence from which survivorship can be determined, it will be presumed, for the purpose of settling rights to property, that all persons, of whatever age or sex, perishing in a common disaster die at the same time, as the common law does not under any circumstances, even in the case where two or more perish of the same calamity, indulge in any presumptions of survivorship resting upon consideration of age or sex. *Balder* v. *Middeke,* 92 Ill. App., 227; *Middeke* v. *Balder,* 198 Ill., 590, 92 Am. St. Rep., 284; *Russell* v. *Hallett,* 23 Kansas, 276; *Newell* v. *Nichols,* 75 N. Y., 78, 31 Am. Rep., 424; *Cook* v. *Caswell,* 81 Texas, 678, 17 S. W., 385.

"It is a general rule that if husband and wife are shown to have perished in the same calamity, nothing appearing to the contrary, there is no presumption of

survivorship, but it is presumed that both died at the same moment. *K. & P. Ry. Co.* v. *Miller,* 2 Colo., 445; *Fuller* v. *Linzee,* 135 Mass., 468.

"If husband and wife die together on the same night from escape of gas in the room, there is, in the absence of evidence upon the point, no presumption that one survived the other. *Southwell* v. *Gray,* 35 Misc., 740, 72 N. Y. Supp., 342.

"If a mother and her infant son perish in a common catastrophe, and there is no evidence as to which perished first, there is no presumption of survivorship, but it will be presumed that both perished at the same time. *Steinde* v. *Goodrich,* 3 Ref. Surr. 87.   The same presumption prevails as to mother and child, regardless of age or the sex of the child.   *Moehring* v. *Mitchell,* 1 Barb. Ch., 264; *Russell* v. *Hallatt,* 23 Kan., 276."

In Vol. 22, Enc. Law, pp. 1251-2 (2nd Ed.), the rule on this subject of survivorship in common disaster, both at the civil law and at the common law is stated. The author thus states the common law rule:   "The rule of the common law, as now established in England and as recognized in the several jurisdictions in the United States where the question has arisen, is that where persons perish in a common disaster, no presumption of survivorship arises from their strength, age, or sex, and the party claiming such survivorship of one or the other of such persons must prove it, and in the absence of such proof, the rights of property as by succession, etc., are to be settled on the theory that all died at the same time."

In the case of the *Young Woman's Christian Home*
v. *French*, 187 U. S., 401, 47 L. Ed., 236, Chief Justice
Fuller cites quite a number of authorities in support
of the following: "The rule is that there is no presump-
tion of survivorship in the case of persons who perish
by a common disaster, in the absence of proof tending
to show the order of dissolution,. and that circumstances
surrounding the calamity of the character appearing on
this record are insufficient to create any presumption
on which the courts can act. The question of actual sur-
vivorship is regarded as unascertainable, and descent
and distribution take the same course as if the deaths
had been simultaneous."

In that case, Mrs. Rhodes, a corpulent lady fifty-
two years of age, with her son twenty-two years of age,
and a good swimmer, perished in the sinking of the
steamer "Elbie." Even under these circumstances, in
the absence of other proof, it is held to be the presump-
tion that both perished at the same time.

In the case of *Re Willbor*, 20 R. I., 126, it is held
that in case of death by the same disaster of sisters who
left wills in each other's favor, with no circumstances
appearing from which it can be inferred that either
survived the others, the rights of succession to the es-
tates will be determined as if death occurred to all at
the same moment.

There is an elaborate note to this case reported 51
L. R. A., 863, citing the rule at the civil law and, at
common law, by the English and American cases, con-

Walton v. Burchel.

taining an extensive discussion of the authorities on the subject.

The jury by their verdict, having found that the father and son perished at the same time, the right of action for the death of the latter survived to the mother, brothers and sisters.   It results that the assignment of error now under consideration is overruled.

Other questions are made by other assignments, but what is above said is decisive of the case.

There is no error in the judgment of the circuit court, and same is affirmed, with costs.