KINGSPORT UTILITIES, INC. v. J. W. MORT, Adm'r.

Eastern Section.   October 31, 1925.

Certiorari denied by Supreme Court February 2, 1926.

1. **Pleading.   Not error for court to permit plaintiff to amend declaration after verdict.**

   In an action for wrongful death where the proof showed without objection the existence of beneficiaries it is not error for the court to permit plaintiff to amend his declaration after verdict by adding "the plaintiff brings this suit for the benefit of Frank Felty, the husband, and children of the intestate who survive her."

2. **Appeal and error.   On appeal the court will look only to the evidence which sustains the verdict.**

   In all controverted facts the jury has settled the matter and it is the duty of the appellate court to look alone to the evidence which tends to sustain the verdict and not consider any evidence to the contrary.

3. **Negligence. Evidence. Evidence held sufficient to show light company negligent in the construction of their electric line.**

Where there was proof that there were no lightning arrestors on the street on which deceased lived, and that the defendant's plant, and especially its wires, poles, transformers and lightning arrestors were not up to the proper construction and to standard on the street on which deceased lived, held sufficient to sustain a verdict against defendant.

4. **Evidence. Evidence of lightning running into other houses on light wire properly admitted to show defendant had notice of defective construction of its lines.**

In an action for death, caused by defendant's negligence in maintaining their light line evidence of other people in the neighborhood that lightning had run into their houses on light wires was competent and was properly admitted to show that defendant had notice of the defective condition of their lines in the neighborhood in which accident occurred.

5. **Evidence. Expert testimony.**

Where witnesses are properly qualified in the matter of skill and knowledge as to electricity and operating electric light plants it is proper for them to testify as to whether defendant's line is maintained according to the present standard of practice and properly constructed.

6. **Damages. Verdict for $3500 held not excessive for the wrongful death of a woman, forty-five years old leaving nine children.**

Where evidence showed deceased was forty-five years old and did all of her own work and left surviving her nine children, a verdict of $3500. held not excessive.

Appeal in Error from Circuit Court, Sullivan County; Hon. D. A. Vines. Judge.

Cox & Taylor, of Johnson City, for plaintiff in error.

Burrow and Burrow, of Bristol, for defendant in error.

OWEN, J. The defendant, Kinsport Utilities, Inc., has appealed from a judgment rendered against it in the law court of Sullivan county at Kingsport for $3500. The plaintiff is the administrator of Floy May Felty. The principal allegations in plaintiff's declaration are as follows:

The declaration alleges that on the 24th day of June, 1921, the Kingsport Utilities, Inc., was engaged in the business of making and selling electric light and electric power, and in the operation of its business it had wires strung on poles along the streets and alleys of the city of Kingsport. It sets out that the company had an electric wires strung on poles along the streets and alleys of the city of Kingsport. It sets out that the company had an electric wire running into the home of G. F. Felty, who lived on one of the streets in said city of Kingsport, and that there was no arrestor or other appliance to prevent lighting generated in the clouds or in the earth from entering said house by means of an electric wire. It is claimed that during an electrical storm, lightning struck an electric light pole near the top and ran down the pole

to the cross arm to which was, attached a wire leading into the
Felty home, and by reason of the want of insulation on said wire,
near where it connected to the cross-arm, the electric current, or
lightning, jumped from the pole to said wire and ran into the
Felty house, striking and killing Mrs. Felty. The specific acts
of negligence alleged are, that the company had "defective light-
ning arrestors in that they would not carry electricity generated
in the clouds to the ground and a defective and improper insulated
wire leading into the house of plaintiff's intestate, and that the
defendant was further negligent "in failing to have its electric
wire equipped with lightning arrestors, or a sufficient number of
lightning arrests, or other appliances to stop lightning and con-
vey it to the ground, instead of allowing it to follow the electric
wire into the house of plaintiff's intestate. It is charged by rea-
son of such condition that Mrs. Felty was struck and killed by
an "electric current from the clouds."

The defendant filed a plea of not guilty. A number of witnesses
testified at the trial, and at the conclusion of all the proof the
defendant entered a motion for a directed verdict, which was
overruled. Thereupon, after argument of counsel the court
charged the jury and the jury returned a verdict for the amount
heretofore stated. After the verdict of the jury was returned
and prior to the motion for a new trial the plaintiff moved to amend
his declaration by charging "the plaintiff brings this suit for
the use and benefit of Frank Felty, the husband, and the children
of the intestate who survive her." This motion was allowed over
defendants objection. Proof was introduced on the trial, without
objection, that the deceased left surviving her, her husband Frank
Felty and several children, whose names were mentioned and age
given at the time that Frank Felty testified before the jury.

Upon the overruling of defendant's motion for a new trial an
appeal was prayed and granted to the Court of Civil Appeals. The
cause was tried at the July Term, 1922, of said court. A proper
bill of exceptions was filed and the cause was ably argued before
the Court of Civil Appeals at its May Term, 1923. In an opinion
delivered on August 25, 1923, by Judge W. W. Faw, that court
held that no final judgment had been entered and the appeal was
premature. The appeal was dismissed and the cause remanded.
It appears that a final judgment was entered after the remand,
and on November 27, 1923, for $3500. An appeal was prayed and
granted from this final judgment and by consent the bill of ex-
ceptions filed at the July Term, 1922, was ordered refiled, the same
appearing to be correct. This was done and the cause was again
ably argued by counsel for the respective parties at the May Term,
1924, of the Court of Civil Appeals, but no disposition was made of

the cause during the year 1924 and the cause was continued until 1925. On the 12th day of August, 1925, the cause was submitted without further argument to the judges composing the Western Division of the Court of Appeals for determination.

The defendant has assigned errors in this Court, as follows.

Assignments Nos. 1, 2, and 3 all go to the alleged error of the court in overruling defendant's motion for a directed verdict. It is insisted that said motion should have been sustained at the conclusion of all the evidence, because: (1), there was no evidence introduced showing that the defendant below was guilty of any negligence in the construction of its electric light lines, or that there was negligence in the maintenance of said lines and system; (2) There was no evidence introduced by the plaintiff below establishing the actual cause of the death of the deceased; (3) because the gravamen of the declaration is that the wires leading into the house were improperly insulated and that there was not a sufficient number of lightning arrestors, whereas it is shown by undisputed proof that the wires leading into the house were insulated and properly so, and it is not customary or good practice to use lightning arrestors on secondary lines, and that it was on a secondary line where the accident occurred.

Assignment No. 4 is an exception to the testimony of Mrs. M. A. Benfield, Miss Maude Benfield and Mrs. Ellie King, who were permitted to testify that they received shocks in their home which was about a half mile.away from the place where the deceased was killed and that these three witnesses were all shocked in the home of Mrs. Benfield about two or three weeks prior to the death of the intestate during an electrical storm, and it is alleged by this assignment that these witnesses lived on a different line from the electric light line supplying the electricity and lights in the home of the deceased, it being insisted that the evidence from these three witnesses was wholly irrelevant.

The fifth assignment is in regard to the objection to the testimony of James Gannon and Fred Dulaney, witnesses for the plaintiff below, and especially the evidence of these two witnesses which dealt with the construction of the defendant's electric lines and maintenance of the same as being improper according to their judgment, and it was error to allow these witness to express their individual opinions and give individual judgments and to what should have been done.

The sixth assignment is in regard to the court permitting the plaintiff below to amend his declaration after the verdict of the jury, wherein that amendment was, "the plaintiff brings this suit for the use and benefit of Frank Felty, the husband, and chil-

dren of the intestate who survive her." It is insisted that this amendment came too late.

The seventh assignment is that the verdict of the jury is excessive.

We are of opinion that the court was not in error in permitting the amendment to the declaration as complained of in assignment six. This objection was settled in the case of Railroad v. Brown, 105 Tenn., 352, and Hale v. Johnson, 140 Tenn., page 186, against defendant's contention. It has been held that in an action for wrongful death where, on motion in arrest of judgment, after overruling a motion for a new trial, defendant raised the point, that the declaration failed to aver that the deceased left next of kin, an amendment to the declaration to include such averment was properly permitted.

In the instant case the proof showed without objection the existence of such beneficiaries, and the Court properly allowed the amendment to the declaration so as to prevent a miscarriage of justice. This assignment is overruled.

We will dispose of the first, second and third assignments of error together.

On the 24th day of June, 1921, Mrs. Floy May Felty was living with her family in a small one-story frame building on Park street in Kingsport, Tennessee. The home was lighted by electricity, and the electricity was furnished by the defendant. Opposite the home of Mrs. Felty was a pole for defendant's electric wires. An electrical storm of great violence struck the town of Kingsport about 2:00 p. m. on June 24, 1921. It appears that Mrs. Felty, who was forty-four years of age, went out on her back porch to empty a pan of water. There came a flash of lighting, a terrific report of thunder. Mrs. Felty fell dead with her feet out on the porch and her head back in the room. There was an electric light on this porch, an extension cord from the ceiling of the porch hanging down, and came within a reach of four to six inches to Mrs. Felty's head when she was standing erect. The globe of this line burst into many fragments, some of the glass falling in the hair of Mrs. Felty's head and some being found on the bosom of her dress and other particles of glass scattered about over the porch floor. Across the street from the Felty home lived J. C. Jordan, his home being some seventy-five feet from the Felty home. Mr. Jordan came out on his porch, thinking that a tree near his home had been struck by the lightning, and as he came out on his porch he heard the Felty children screaming. Rushing over to the Felty home he found Mrs. Felty dead and lying as heretofore stated. He was followed by his sister-in-law from his home, Mrs. Kate Jordan. Both of these witnesses testify that

Mrs. Felty's neck was badly swollen and had turned dark. They found no bruises upon her body and no burns. The undertaker, Mr. Sams, prepared the body for burial. He found a red spot about the size of a half dollar upon Mrs. Felty's abdomen, but there is proof in the record that a person can be killed by lightning without receiving a burn or a bruise. The lightning struck defendant's electric pole across the street from intestate's home and splintered this pole from the top down to where the wires lead from the pole into the Felty home. The insulation upon the wires at the pole had been removed or had worn away and the proof shows by this insulation being removed these copper wires became good conductors for the lightning. Lightning is electricity, and while much has been said and written upon the subject of electricity, yet it is admitted that it is not fully understood by scientist and those who have given it much study. The proof, however, indicates that lightning seeks to go in the ground and it likes to follow a path and to follow the path of least resistance. Some objects are good conductors for lightning or electrity while others are non-conductors. There is proof to show that lightning can follow a wire into a home and burst the globe and not burn the cord or do other damage. This was a controverted fact, but, of course as in all controverted facts, the jury has settled same in favor of the plaintiff, and it is the duty of this court to look alone to the evidence which tends to sustain the verdict and not consider any evidence to the contrary. Chattanooga v. Hargraves, 111 Tenn., 484; Walton v. Burchel, 121 Tenn., 723; Hines v. Patridge, 144 Tenn., 233.

The electric light pole of the defendant which is in front of the deceased's home was the only pole of the defendant that was struck, split and shivered on the day of Mrs. Felty's death. Not only was the globe that was on the porch bursted and shattered but three globes or the lights for three globes in another room were also extinguished.

We find, as a fact, that the breaking of the globe on the porch and the death of Mrs. Felty occurred at the same time. It is insisted that she might have become frightened at the flash of lightning and thrown up her hand and touched the globe and then fell dead from heart trouble. There is proof that if she had died of heart trouble her neck would have not become swollen and discolored so quickly after her death and there is proof that simply throwing the hand against a swinging globe will not shatter it into so many pieces, and furthermore when particles of glass fell in Mrs. Felty's hair she must have been directly under the globe, and as she fell backward with her head inside of the room other particles fell upon her bosom and particles upon the floor. The

upper half of her body was in the room and the lower half on the porch. Mrs. Felty was seen walking in her garden about fifteen minutes before her death. It was a hot, sultry afternoon as the storm approached. The proof is that a person who is perspiring or damp will become a better conductor for lightning than if the person was not in a state of perspiration but was perfectly dry.

There was nothing the matter with Mrs. Felty's neck before she was killed. Dr. Tipton, who testified that Mrs. Felty suffered from leakage of the heart examined her body some two or three hours after her death and gave a certificate that she had died from being struck by lightning.

Learned counsel for the defendant in their able arguments and their splendid briefs insist that this case falls within the doctrine announced in DeGlopper v. Railway & Light Co., 123 Tenn., 642, and Hart v. Union City, 107 Tenn., 294, but those cases are distinguished from the instant case because it was announced in those cases that the plaintiff must prove, (1) a duty the defendant was due him; (2) a negligent breach of that duty; (3) injuries received therefrom resulting approximately from the breach of that duty.

Of course negligence must always be proven and the death of the person must be established so that the jury will not be left to mere guess work or conjecture. The plaintiff further proved, in the instant case, that there was no insulation on the wire where it connected with the spool on the pole which was struck by lightning, and which wire entered the deceased's home. There is also proof to show that there were no lightning arrestors on Park street, the street on which Mrs. Felty lived at the time of her death, and there is proof to show that the defendant's plant, and especially its wires, poles, transformers and lightning arrestors were not up to the proper construction and to the standard along Park street. There is proof to show that the defendant did not have a sufficient number of transformers. The nearest transformer to the deceased home was more than 1400 feet away. A transformer is attached to an electric pole and is an apparatus or a coil of wire encased in a box for the purpose of reducing the voltage bringing the high powered voltage which is sufficient to cause death to a person who comes in contact with the same, to a lower voltage. A lightning arrestor is a coil with air gap supposed to take off disturbances on the lines and discharge the electricity into the ground. The wire in a lightning arrestor provides a ready path to the ground, and the current will take the path of least resistance to the ground, so that the wire which runs to the ground is used as a lightning arrestor and the current will take the same. A lightning arrestor is not connected with the main

line of the current generated at the plant. When the line or wire that is connected with the main line or with a generating power in the plant is overcharged, as by lightning, it jumps the air gam, strikes the lightning arrestor and goes down into the ground. A lightning arrestor is the best thing to protect homes from receiving high voltage that is known to the distributors of electricity, based upon the experience of electricians for twenty-five or more years and the statistics are very low where a person is killed by electricity from the wire in a house during a storm.

The plaintiff introduced two expert witnesses, skilled electricians, Fred Dulaney and James Gannon, both of whom testified from their experience; that Mr. Gannon has been an experienced electrician, a builder of electric light plants and an operator of electric plants for forty years. Mr. Dulaney also fully qualified in the matter of skill and knowledge as to electricity and operating electric light plants, and these two witnesses, after an examination of the lines along Park street testified that the defendant had not maintained its line according to the present standard of practice and that the lines were not properly constructed. The defendant introduced four experienced electricians who contradicted Dulaney and Gannon, but there is material evidence as to the faulty construction and the negligence of the defendant in the maintenance of its lines as found by the witnesses produced in behalf of the plaintiff, and it results that the first three assignments of error are overruled and disallowed.

We will next consider the assignment of error in regard to the exception to the testimony of Mrs. Benfield, Miss Maude Benfield and Mrs. Ellie King. We are of opinion that this testimony was competent and was properly admitted to show that the Utilities Company had notice of the defective condition of their lines in the neighborhood in which the accident occurred and in which Mrs. Felty was killed. There was proof without exception that the lightning arrestor was placed near the Benfield home shortly after the lightning shocked Mrs. Benfield, her daughter and her neighbor in Mrs. Benfield's home. The Supreme Court of Tennessee has held that evidence of former fires put out by some of defendant's locomotives was competent,—that is, fires scattered by the defendant's locomotives while going past or near plaintiff's property. Railroad v. Fort, 112 Tenn., 444. This evidence is also admissible to rebut the testimony of defendant's expert witnesses, and that lightning could not come down a cord or electric light wire without destroying the wire and burning the cord. These three witnesses all testify that lightning did come down the wire of the Benefield house, knocked the three witnesses down, but did not destroy the wire or burn the cord. There was also proof by

the defendant that lightning would not break the globe of an electric light. The light globe in the Benefield home was shattered. In a suit against a municipality for injuries caused by a defective sidewalk, evidence of other accidents there was permitted in order to show that the sidewalk was defective and the city knew it. Dist. of Columbia v. Ames, 107 U. S., 419. The fourth assignment of error is overruled and disallowed.

The fifth assignment complains of the evidence of James Gannon and Fred Dulaney. We are of opinion that the evidence of these two witnesses was competent and there was no error in overruling defendant's objection to their testimony. Winstead v. Moore, 132 Tenn., 717; Lively v. Am. Zinc Co., 137 Tenn., 277.

There is no error assigned upon the charge of the trial judge and we are of opinion that the court properly instructed the jury in regard to the weighing of the evidence of the witnesses Gannon and Dulaney. The court instructed the jury to confine the proof of negligence on the part of the defendant company to the methods adopted by prudent companies in like business.

The seventh and last assignment is that the verdict of the jury is excessive. The deceased was forty-four years of age. She was the mother of nine children. While there is proof to show that she had a leakage of the heart and had had a slight attack of pneumonia in March prior to the time of her death when this leakage was discovered, yet up to the very time of her death she was active and industrious. She was doing all of her housework, prepared her husband's breakfast on the morning of her death, and was working in her garden fifteen minutes before her death. She did her own laundry most of the time. She had no one to help her except her children in the household work. In the case of Hines v. Partridge, 144 Tenn., 238, the Supreme Court affirmed the judgment for $10,000, holding that the same was not excessive where a housewife and mother thirty-four years of age was killed; and in Tenn. Railroad v. Van Hoy, 143 Tenn., 312, the Supreme Court also affirmed a judgment for $10,000 holding the same was not excessive where the deceased was a wife twenty-one years of age.

In the instant case, we are of opinion that the jury evidently took into consideration Mrs. Felty's physical condition, but without receiving this shock who knows but what she would have probably lived many many years, and we are of opinion that, under all the facts and circumstances $3500 is not excessive.

We have given much consideration to this record, and we have, after reading and considering the record and the splendid briefs furnished by counsel for both parties, reached the conclusion that justice has been done by the court and jury upon the trial below. It results that all of the assignments of error are overruled and

disallowed and the judgment of the lower court is in all things affirmed. The plaintiff will recover the judgment rendered in the lower court with interest thereon from the date of its rendition, and the costs of the cause, for which execution will issue. The plaintiff will recover of the defendant and surety on appeal bond the costs of the appeal for all of which execution will issue.

Heiskell and Senter, JJ., concur.