TENNESSEE ELECTRIC POWER CO., Plaintiff in Error, v. VAN DODSON, Defendant in Error.

Middle Section.　May 1, 1931.

Petition for Certiorari denied by Supreme Court, February 13, 1932.

Shepherd, Carden, Curry & Levine, all of Chattanooga, and Malcolm C. Hill, of Sparta, for plaintiff in error, Power Co.

Camp & Butler, of Sparta, for defendant in error, Dodson.

CROWNOVER, J.  This action was brought by Van Dodson against the Tennessee Electric Power Co. to recover damages for the overflow of a part of his farm, on Sink Creek, in White County, caused by the erection of a seventy-five foot dam across Caney Fork

River, in 1925, which retarded the flow of subterranean streams and obstructed the discharge of water from Sink Creek and impounded water on said farm, destroying crops and its productive value.

The power company pleaded not guilty and that the cause of action, if any, originated more that twelve months next before the bringing of this action.

The action was tried by a judge and a jury and resulted in a verdict and judgment for $5,000 in favor of Dodson. The defendant's motion for a new trial was overruled and it has appealed in error, and has assigned errors, which are, in substance, that the court erred:

(1) In not directing a verdict for the defendant Power Company, as there was no evidence to support a verdict for the plaintiff.

(2) In refusing to charge defendant's written request:

"From the mere fact that two springs were covered at their outlet by the water of the dam pond, you cannot presume that the underground course was thereby obstructed and at the same time infer that this obstruction interfered with the discharge of water from Sink Creek and thereby caused damage and loss to plaintiff."

(3) The verdict was excessive.

(4) The court erred in allowing interest on the verdict.

There is no substantial conflict in the material testimony. The plaintiff, Dodson, owns a farm of two hundred and thirty acres on Sink Creek, in White County, about two miles north of Calf Killer River, a tributary of Caney Fork River. Sink Creek begins at a spring in the base of Gum Spring Mountain, a short distance above Dodson's farm, and runs through his farm to sink holes, known as "The Sinks," a short distance below his farm, where it sinks into the ground.

The defendant Power Company several years ago constructed a forty foot dam across Caney Fork and Collins Rivers at Rock Island, fifteen or twenty miles southwest of Dodson's farm, for power purposes, and in 1925 it constructed or raised its dam to the height of seventy-five feet, which caused the water at pool level to back up Caney Fork and Calf Killer Rivers for several miles.

Dodson claims that since the raising of the dam the back water has obstructed the subterranean passage and outlets, and has retarded the discharge of the water from Sink Creek to such an extent that the waters of Sink Creek back up and overflow, each year, about thirty acres of his valuable bottom land destroy his crops, which renders the land practically valueless.

According to the proof the crops were not often lost before 1920, but the crops were lost in the years 1920, 1922, 3, 5, 6, 8 and 9.

The water comes down off the mountain into Sink Creek in a large volume, and covers about thirty acres of his bottom land, in places thirty or forty feet deep. But it usually sank and ran away within a short time, except during the years above mentioned when it remained for several days and destroyed the crops.

The place where the water enters "The Sinks" of Sink Creek is ninety feet above the level of the pool above the dam.

It is not known where the subterranean passages from Sink Creek are located, but witnesses had put coloring matter in the water at "The Sinks" and it showed up five days later in four springs five to five and one-half miles below on the Calf Killer and Caney Fork Rivers. Two of these large springs were above pool level and two were fifteen feet below pool level, and the pressure of the water of the pool was twelve hundred pounds to the square foot at the latter two springs fifteen feet below pool level. The coloring matter also showed up in Phifer's well, three or four miles to the northwest of Dodson's farm. The bottom of Phifer's well was only six feet below the top of "The Sinks" of Sink Creek. The springs were two or three miles apart and were south of Dodson's farm.

There are many sink holes, caves and caverns in that section, and there are evidences of subterranean streams or passages, but their locations are not shown are known. Some sink holes in that section become stopped up and form lakes which remain for some years. Water in lakes formed in other sink holes, after several years, has sunk and the lakes become dry, thus showing that there are subterranean passages in that section.

1. We are of the opinion that the first assignment of error, to the effect that the court erred in not directing a verdict for the defendant Power Company as there was no evidence to support a verdict for the plaintiff, is well made and must be sustained for the reason that there is no proof in the record that the erection of the dam by the defendant Power Company and the accumulation of the water in the pool above the dam obstructed the subterranean passages and stopped the flow of the water through the sinks of Sink Creek and caused the water to remain on the plaintiff's farm for a sufficient length of time to destroy his crops. In fact, it is not known where the main subterranean passage from the sinks is located or whether the springs mentioned were the outlets of any substantial part of the water from Sink Creek.

"Where a subterranean stream flows in a distinct, permanent, and well-defined channel, it is governed by the same rules as apply to a natural watercourse on the surface; and the owners of land beneath which it flows have the same rights in respect to it as riparian proprietors have with respect to a stream on the surface; and the same is true with respect to large bodies

of underground water located in well defined strata. But all underground waters are presumed to be percolating, and to take them out of the rule in regard to such waters the existence and course of a permanent channel must be clearly shown." 40 Cyc., 627-8; 27 R. C. L., 1168-1170, secs. 89-90; 30 Am. & Eng. Ency. of Law (2 Ed.), 310-311.

"Subterranean watercourses which flow in known and defined channels are governed by the same rules, with regard to their diversion and the correlative rights of the landowners through whose land they run, as are applied to surface watercourses. In order, however, that the rules applicable to surface watercourses shall be applied to subterranean streams, the channels of such streams must be known and defined, otherwise they will be considered as percolating waters and will be governed by the rules applicable to the latter class of waters." 30 Am. & Eng. Ency. of Law, 2 Ed., 322-3.

"The obstruction or diversion of an underground stream flowing in a defined channel is an actionable injury to those whose use of the water is thereby impaired; but no actionable injury results from the obstruction or diversion of percolating waters, thus depriving others of a supply, save in the few states which recognize the right to an uninterrupted flow of such water." 40 Cyc., 629; 27 R. C. L., 1171, sec. 90.

The existence of a well defined subterranean stream may be shown by proof that a spring on the land of some of the parties ran surface depressions or sinks, such as mark the course of subterranean streams in limestone regions, through which water below could be seen, or heard, and which extended in a direct line through the lands of other parties, or where if the water was muddied or colored in one excavation or sink it showed up in a short time in other excavations or springs. 27 R. C. L., 1184; Tampa Waterworks Co. v. Cline, 37 Fla., 586, 20 So., 780, 53 Am. St. Rep., 262, 33 L. R. A., 376.

A lower owner has no right to pen back or obstruct the flow of the water so as to flood the lands of upper owners, or, by raising the level of the water in the channel, interfere with the drainage of the upper land, and the injured party may have an action for damages or for injunction. 30 Am. & Eng. Ency. of Law, 2 Ed., 374, 377; Allen v. McCorkle, 3 Head, 181; Harmon v. Carter, 59 S. W., 656.

But the trouble in this case is that it is not known what obstructed the subterranean channel and retarded the flow of the water out of Sink Creek. And there is no proof upon which the jury could predicate a verdict for the plaintiff. It is insisted that the water did not stand on the plaintiff's bottom land before the defendant raised its dam, but the uncontradicted proof shows that the plaintiff

lost his crops in 1920, 1922 and 1923. Something retarded the flow of the water in those years. The sinks are ninety feet above the pool level and there is no proof to show that the water in the pool retarded the outflow of the water from Sink Creek. Water will seek its level and the fact that two of the outlets were fifteen feet below pool level cannot of itself retard the flow of water from Sink Creek; hence it is evident that the water was retarded in some other manner. The uncertainty of the conditions and courses of the underground passages and the proof failing to explain the reason for the general conditions, leaves the matter conjectural and speculative. There must be some evidence of a material or substantial nature for the case to be submitted to the jury. Where there is no conflict as to any material fact, there is nothing for the jury to find, and the question then becomes one of law for the court. There must be some material evidence to support the verdict. The scintilla evidence rule is not in force in Tennessee. Brenizer v. Railway, 156 Tenn., 479, 3 S. W. (2d), 1053.

The proof shows that the defendant in error had cut the timber off and cleared the banks of Sink Creek and had changed its course; that after heavy rains the water came down Sink Creek in large quantities and washed leaves, corn stalks, sticks and pieces of logs into the sinks, which stopped up the sinks at times, and the defendant in error was forced to clean out the trash and debris so as to let the water flow out, and it is not known whether some of this went down into the sinks out of sight.

The trial judge evidently regarded the case as one controlled by the rules of circumstantial evidence, but a theory cannot be said to be established by circumstantial evidence, unless the facts and circumstances are not only consistent with such theory, but inconsistent with any other rational theory. 10 R. C. L., 1001.

"Proof of the essential fact must be had, either direct or positive by witnesses who know the fact or circumstantial by witnesses who know and testify to facts which tend to establish or prove the essential fact; and only when the circumstances are, in the judgment of the court or jury, such as usually or necessarily attend the essential fact are they sufficient in law to warrant a verdict, judgment, or decree establishing as a fact that which has not been proved by direct or positive evidence." Marquet v. Insurance Co., 128 Tenn., 213, 225, 159 S. W., 733; Dunlap v. State, 126 Tenn., 415, 150 S. W., 86.

This rule of circumstantial evidence has been applied to various conditions and is uniformly followed by our courts. Crowe v. Railway, 2 Tenn. App., 634; Railway & Light Co. v. Harrison, 5 Tenn. App., 22; Insurance Co. v. Robertson, 6 Tenn. App., 43; Lawless v.

State, 72 Tenn., 172; Dietzel v. State, 132 Tenn., 47, 177 S. W., 47; Walton v. Burchel, 121 Tenn., 715, 121 S. W., 391.

"Where the testimony leaves the matter uncertain and shows that any one of half dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion." Patton v. Railroad, 179 U. S., 658, 45 L. Ed., 361.

"The law requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences." U. S. v. Ross, 92 U. S., 281, 23 L. Ed., 707.

"In view of this evidence, were the verdicts in these cases based on mere conjecture? Do they represent nothing more than guess work? If so, they could not be sustained." Railway & Light Co. v. Harrison, supra.

The rule is universal that no recovery can be had if the evidence leaves it to conjecture which of two probable causes resulted in the injury, where defendant was liable for only one of them. Hart v. Union City, 107 Tenn., 294, 64 S. W., 6; Railroad v. Hall, 5 Higgins, 491, 498; Oil Co. v. Campagna, 146 Tenn., 389, 396, 242 S. W., 646; Railroad v. Lindamood, 111 Tenn., 457, 78 S. W., 99.

"Unless facts are shown from which negligence may be reasonably inferred, a jury should never be permitted to infer arbitrarily and without evidence that there was negligence. When a fact is established, some other fact may be justly inferred therefrom; but when a plaintiff, instead of presenting a fact or facts from which the negligence of the defendant may be reasonably inferred, gives to the jury only a presumption drawn from other facts, the jury are not to be allowed to infer negligence from such presumption. The inferences cannot be drawn from a presumption, but must be founded upon some fact legally established." Railroad v. Lindamood, 111 Tenn., 457, 473, 78 S. W., 99; De Glopper v. Ry. & Light Co., 123 Tenn., 633, 134 S. W., 609.

As stated by counsel for plaintiff in error, there is not the necessary correlation or connection between the proven facts and the results claimed as justify an inference of responsibility. The fact that the two small springs were at times covered by the water of the pool is established, but there is no proof that this interfered with the flowage of water from Sink Creek. The jury was left to infer from this fact that the flow was retarded or that some underground disorder was thereby caused, and from this inference again infer or

presume that this was sufficient to interfere with the flowage of the water from Sink Creek. It would have to be inferred that there was an obstruction at the two small springs, and it would have to be assumed that the unusually heavy rains had nothing to do with the situation, or that the trash and debris had not interfered with the underground courses, or that the other changing conditions did not substantially affect the water collected on Dodson's land. It is a piling up of inference upon inference, or presumption upon presumption, and is a matter of speculation as to which one of the several causes is responsible for the serious condition of the farm owned by defendant in error.

It is the duty of the court to direct a verdict for the defendant where there is no evidence upon which reasonable minds may differ. Jackson v. The Texas Oil Co., 10 Tenn. App., 235; Fitch v. American Trust Co., 4 Tenn. App., 87.

Hence this assignment of error must be sustained.

2. We are of the opinion that the special request submitted by the defendant should have been given in the charge to the jury, because it would have assisted the jury in arriving at a verdict. This request eliminated from the consideration of the jury, as a basis for a verdict against the defendant, the fact that the two springs were covered by water in the pool. This request presented pointedly the doctrine that inference cannot be based upon inference or presumption, and this point was not otherwise covered in the charge. It was the expression of defendant's theory of the case to that extent and the jury should have been instructed that this one fact was not sufficient to support a verdict against the defendant.

"We think the defendant below had a right to have applied for the guidance of the jury, in clear and explicit terms, the rules of the law invoked by it in its special requests to the facts of the case. Thus given, they would have afforded a safer guide than general rules embodied in a charge which embraces much else." Railroad v. Lindamood, supra.

It is the duty of the trial judge to narrow the issues as much as practicable, in order to facilitate the labors of the jury. Yarn Co. v. Napper, 124 Tenn., 155, 170, 135 S. W., 780.

"Every litigant with testimony tending to sustain it is entitled, on proper request, to have his theory of every material issue of fact submitted to the jury on a correct charge of the applicatory law." 7 Michie's Tenn. Ency. Digest, 235, and cases cited.

Hence the second assignment of error must be sustained.

3-4. The first two assignments of errors having been sustained, it follows that the third and fourth assignments of errors, to the effect that the verdict was excessive, and that the court erred in al-

lowing interest on the jury's verdict, become immaterial, and they are therefore overruled.

It results that the judgment of the lower court must be reversed and the action dismissed. The cost of the cause including the cost of the appeal is adjudged against defendant in error, Dodson, and the cost of the lower court is also adjudged against the surety on his prosecution bond to the amount of the bond.

Faw, P. J., and DeWitt, J., concur.